J-A11037-19

J-A11038-19

2019 PA Super 250

| S.C.B. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.S.B. | : | |
| | : | |
| Appellant | : | No. 758 MDA 2018 |

Appeal from the Order Entered April 5, 2018
In the Court of Common Pleas of Cumberland County
Civil Division at No:  2016-CV-00825

| S.C.B. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.S.B. | : | No. 763 MDA 2018 |

Appeal from the Order Entered April 5, 2018
In the Court of Common Pleas of Cumberland County
Civil Division at No:  2016-CV-00825

| S.C.B. | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.S.B. | : | No. 1688 MDA 2018 |

Appeal from the Order Entered September 12, 2018
In the Court of Common Pleas of Cumberland County
Civil Division at No:  2016-CV-00825

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

OPINION BY STABILE, J.:                 **FILED: AUGUST 20, 2019**

S.C.B. ("Mother") and J.S.B. ("Father") cross-appeal from the order entered April 5, 2018, in the Court of Common Pleas of Cumberland County, awarding both parties shared legal custody, awarding Mother primary physical custody, and awarding Father partial physical custody, with respect to their son, I.W.B. ("Child"), born in August 2014.  Mother also appeals from the order entered September 12, 2018, directing her to pay $500 in fees to Child's guardian *ad litem* ("GAL"), Samuel Andes, Esquire.  After review, we vacate the orders and remand for further proceedings.

This matter has a lengthy and tortuous procedural history.  It began on February 11, 2016, when Mother filed a complaint requesting shared legal and primary physical custody of Child.  The case culminated in a final custody order entered August 3, 2016, which awarded the parties shared legal custody and awarded Mother primary physical custody.  The order awarded Father partial physical custody during the first, third, and, if available, fifth weekend of each month from Saturday at 9:00 a.m. until Sunday at 4:00 p.m., and during each Wednesday from 4:00 p.m. until 7:00 p.m.  Father did not appeal but filed a motion for reconsideration on September 2, 2016.

On November 7, 2016, the trial court entered an order modifying the August 3, 2016 custody order slightly.  Once again, Father did not appeal the order but filed a motion for reconsideration on December 2, 2016.  Then, on

March 16, 2017, the court entered an order purportedly addressing both of Father's motions for reconsideration and modifying the order of November 7, 2016. Mother appealed, and a prior panel of this Court vacated the order on October 2, 2017. We held that the court lacked authority to act on Father's motions because it did not grant reconsideration expressly within the thirty-day appeal period following the entry of each order. *See S.C.B. v. J.S.B.*, 179 A.3d 532 (Pa. Super. 2017) (unpublished judgment order).

Meanwhile, Mother filed a petition for special relief on March 3, 2017, in which she requested, among other things, that the trial court order the parties to participate in a custody evaluation. The court entered an order on April 18, 2017, stating it would defer its decision on Mother's request for a custody evaluation until it received and reviewed a report from the GAL. On June 16, 2017, Father filed a motion requesting that the court deny Mother's petition. The court denied Father's motion on June 20, 2017, stating that its order of April 18, 2017, remained in effect.[1]

On October 4, 2017, Father filed a petition for modification of custody, requesting shared legal and primary physical custody of Child. Mother filed a motion on November 2, 2017, requesting that the trial court conduct a hearing on her petition for a custody evaluation. On December 21, 2017, the court entered an interim order modifying the parties' custody award pursuant to the

---

[1] Mother filed a petition for contempt on June 28, 2017. Father filed his own petition for contempt on July 20, 2017. Following a conciliation, the trial court entered an order on August 31, 2017, directing the parties to withdraw their contempt petitions.

GAL's recommendation. Specifically, the order awarded Father partial physical custody on an alternating two-week schedule. The order awarded custody from the end of Father's workday on Friday until the start of his workday on Monday during the first week. The order awarded custody from the end of Father's workday on Wednesday until the start of his workday on Friday during the second week. In the order, the court also declined to delay the matter further in order to obtain a custody evaluation. Mother filed a notice of appeal from the interim order but later withdrew her appeal.

The trial court conducted a hearing on the merits of the parties' custody case on March 8, 2018. The parties presented evidence addressing a variety of subjects. Most notably, the evidence focused on Father's complaint that the maternal grandparents babysit Child while Mother works, Mother's claim that Child suffers an excessive number of injuries while in Father's care, and Mother's contention that the parties should undergo a custody evaluation in order to investigate the injuries.

With respect to Child's maternal grandparents, the record reveals that Mother has an unconventional work schedule and often works at night. Mother testified that eighty or ninety percent of the time she works some type of late shift, such as the 3:00 p.m. to 11:00 p.m. shift, or the 10:40 p.m. to 6:40 a.m. shift. N.T., 3/8/18, at 157. Accordingly, she relies on Child's maternal grandparents to babysit Child while she is at work. She stressed that Child is often asleep while she is working and that she prefers to work late shifts so

she can spend as much time as possible with him during his waking hours. *Id.* at 152-54. In response, Father suggested that Child should be in his care while Mother is at work, explaining that he usually works from 6:30 a.m. until 3:30 p.m., and is available during the afternoons. *Id.* at 12, 18-21.

As for Mother's claim that Child suffers an excessive number of injuries, she testified that he becomes hurt far more frequently while in Father's care than in her care, and that Father exhibits a "callous reaction" whenever she brings Child's injuries to his attention. *Id.* at 130. Mother referenced, for example, an incident during which Child injured his knee and had difficulty walking, and an incident during which he reported that his head hurt, saying, "dad hit me[.]" *Id.* at 133-35. In an effort to refute Mother's claims, Father presented the testimony of his friends, S.K. and M.P., who stated that Father does not pose a safety risk to Child. *Id.* at 195-96, 202.

Finally, concerning Mother's request for a custody evaluation, the trial court heard the testimony of the parties' former co-parenting counselor, Ashley Milspaw, Psy.D., who recommended that a custody evaluation would be beneficial to help determine whether Mother is trying to alienate Child from Father, or whether she has "some justified concerns regarding the child's safety." *Id.* at 97. Father questioned the need for an evaluation, describing Mother's request as a "delay tactic." *Id.* at 82. He stated that he would be willing to undergo an evaluation if Mother paid for it. *Id.* at 28-29. He also accused Mother of trying to manipulate the outcome of the evaluation by

contacting potential evaluators in advance and insisting that the evaluator should know she is the one providing the funds. *Id.* at 25-26, 77-78. This would be contrary to the GAL's proposal that Mother place the funds in escrow and that the GAL provide the funds to the evaluator. *See id.* at 217-18 (the GAL discussing the proposal). Mother denied these allegations, stating that she contacted only one potential evaluator in advance, before she knew the evaluator would become involved in the case, and did so because she "was not comfortable with the fact that thinking that [*sic*] a psychologist would violate their ethics . . . . so I called . . . to see if in fact anyone had ever escrowed money and then paid so that it was not known where the funds came from. And she said she had never done that in her experience." *Id.* at 118-29.

After the hearing, on March 16, 2018, Mother filed motions to compel preschool attendance and for designation of child counselor/play therapist. In her motions, Mother requested that the trial court enter an order directing that Child attend a specific preschool to which Father objected, and an order designating one of three enumerated mental health professionals to address any potential behavioral issues or concerns relating to Child.

On March 22, 2018, the trial court entered an interim order awarding Father partial physical custody of Child every other weekend from 4:00 p.m. on Friday until 7:00 p.m. on Sunday, every Tuesday from 4:00 p.m. to 7:00 p.m., and every week from Thursday at 4:00 p.m. until "the exchange Friday

morning with Grandparents, at the location Grandparents choose." Interim Order of Court, 3/22/18, at 1. On April 5, 2018, the court entered an order indicating that it intended to render the March 22, 2018 interim order final. In an opinion accompanying the order, the court conducted an analysis of some, but not all, of the custody best interest factors listed at 23 Pa.C.S.A. § 5328(a). Specifically, the court addressed 23 Pa.C.S.A. § 5328(a)(1), (2), (3), (4), (11), (12), (13), and (16), but failed to address 23 Pa.C.S.A. § 5328(a)(2.1), (5), (6), (7), (8), (9), (10), (14), or (15). The court stated that it was incorporating by reference its prior analysis of the factors from its order of August 3, 2016. Trial Court Opinion, 4/5/18, at 4. The court also noted its finding in August 2016 that Father should receive increased custody of Child "as his parenting skills develop" but that Mother has "the far more developed infrastructure that . . . is in the best interest of the child." *Id.* On April 30, 2018, the court entered an order granting Mother's motions to compel preschool attendance and for designation of child counselor/play therapist. Both Mother and Father filed notices of appeal from the April 5, 2018 order on May 4, 2018, along with concise statements of errors complained of on appeal, and motions for reconsideration.[2]

Subsequently, the GAL filed a motion for payment of fees on September 4, 2018. In his motion, the GAL averred that Mother had failed to pay her half of his fees, as directed by the trial court's order appointing him as Child's

---

[2] The trial court denied both motions for reconsideration on June 4, 2018.

- 7 -

GAL. The court entered an order on September 12, 2018, directing Mother to pay the GAL within ten days. Mother, acting *pro se*, timely filed a notice of appeal from the September 12, 2018 order on October 11, 2018, along with a concise statement of errors complained of on appeal.[3, 4]

Mother raises the following claims for our review regarding the April 5, 2018 order at Superior Court docket number 763 MDA 2018:

> 1. Did the [trial] court err in its final custody order when it failed to consider factors 5, 8, 9, 10, 14 and 15?
>
> 2. Did the [trial] court err by not giving weighted consideration to factors relative to the safety of []Child, insofar as Mother testified

---

[3] Mother filed a petition for contempt on June 25, 2018, in which she averred that Father refused to return Child to her care on Friday, May 25, 2018, per the order of April 5, 2018. On September 21, 2018, Mother filed yet another petition for contempt, averring that Father refused to return Child to her care on Friday, September 14, 2018.

[4] Mother filed her notice of appeal *pro se*, despite continuing to retain private counsel. As a general matter, our courts prohibit *pro se* filings by represented appellants, and we treat those filings as legal nullities. *See Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010). However, *pro se* notices of appeal are an exception to this rule. In *Commonwealth v. Cooper*, 27 A.3d 994, 1007 (Pa. 2011), our Supreme Court held that a *pro se* notice of appeal, filed while Cooper was represented by counsel, was not a legal nullity, but was simply "premature." More recently, this Court observed that *pro se* notices of appeal filed by represented appellants are distinguishable from other forms of hybrid representation, because they protect the appellants' right to appeal as set forth in the Pennsylvania Constitution. *Commonwealth v. Williams*, 151 A.3d 621, 624 (Pa. Super. 2016) ("Because a notice of appeal protects a constitutional right, it is distinguishable from other filings . . . . We thus hold that this Court is required to docket a *pro se* notice of appeal despite Appellant being represented by counsel[.]"). Therefore, we do not treat Mother's *pro se* notice of appeal as a legal nullity.

that Father has on multiple occasions returned [] Child with injuries?

3. Did the [trial] court err by relying on a standard custom and practice in fashioning its custody order?

4. Did the [trial] court err by denying Mother's request for a custody evaluation despite the fact that there was uncontroverted expert testimony that such an evaluation was necessary, and where Father claimed to have agreed to one anyway?

Mother's Brief (763 MDA 2018) at 4 (suggested answers omitted).

Mother adds two more claims at Superior Court docket number 1168

MDA 2018, regarding the September 12, 2018 order:

I. Did the [trial] court violate [Mother's] due process rights when it ordered her to pay $500 to Mr. Andes, the [GAL], without taking evidence, argument, or trial?

II. Did the [trial] court commit an error of law and/or abuse[] its discretion when it ordered [Mother] to pay $500 to Mr. Andes without taking evidence, argument, or trial, especially since the Superior Court vacated the Order requiring her to pay $1,500 in his fees and when Mr. Andes owes [Mother] a reimbursement?

Mother's Brief (1168 MDA 2018) at 4 (suggested answers omitted).

In addition, Father raises the following claims at Superior Court docket

number 758 MDA 2018:

A. Did [the] trial court err by granting [the] maternal grandparents custody of the minor child when the maternal grandparents are not a party to the case and when that custodial time supersedes [Father's] custodial rights to the minor child when [Mother] is working and when [Father] is available to care for the minor child?

B. Did the trial court err in admitting photographic evidence over [Father's] objection when there was no testimony specifically pertaining to the photographs, the photographs were not provided in advance[,] there was no opportunity to review the photographs

and when there was no opportunity to cross examine [Mother] regarding her allegations concerning the photographs?

Father's Brief at 2 (underlining and suggested answers omitted).

We begin by addressing whether we possess jurisdiction to review the trial court's orders. "'[S]ince we lack jurisdiction over an unappealable order it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order.'" *Gunn v. Automobile Ins. Co. of Hartford, Connecticut*, 971 A.2d 505, 508 (Pa. Super. 2009) (quoting *Kulp v. Hrivnak*, 765 A.2d 796, 798 (Pa. Super. 2000)).

It is well-settled that "[a]n appeal lies only from a final order, unless permitted by rule or statute." *Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa. Super. 2013). Generally, a final order is one that disposes of all claims and all parties. *See* Pa.R.A.P. 341(b). "[A] custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." *G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa. Super. 1996).

With regard to the appeals at 758 MDA 2018 and 763 MDA 2018, the trial court indicated in its order of April 5, 2018, that it intended to render the March 22, 2018 order final. It is clear, however, that the April 5, 2018 order did not resolve all of the custody claims pending between the parties at that time, as Mother's motions to compel preschool attendance and for designation of child counselor/play therapist remained outstanding. Nonetheless, because

- 10 -

the court later entered orders granting Mother's motions on April 30, 2018, these appeals are properly before this Court. Notably, even if the court had not granted Mother's motions until after the parties filed their notices of appeal on May 4, 2018, we would still possess jurisdiction. **See In re N.W.**, 6 A.3d 1020, 1021 n.1 (Pa. Super. 2010) ("[I]f [an] appeal is prematurely filed from an interlocutory order, the appeal is perfected when a final, appealable order is subsequently entered.").

We reach the same result with respect to Mother's appeal at 1688 MDA 2018 challenging the order directing her to pay her share of the GAL fees. At the time the trial court entered the order of September 12, 2018, it had completed its hearings on the merits of the custody action and had entered a final custody order. There were no other custody hearings or claims pending in the underlying matter. While the court entered the September 12, 2018 order during the pendency of the parties' cross-appeals from the order entered April 5, 2018, we note that the court possessed jurisdiction to do so. Generally, a trial court may not proceed further in a case once a party appeals. **See** Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter."). There are, however, exceptions to this rule. Pa.R.A.P. 1701(b)(2) provides that a court may "[e]nforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter[,]" even while

the case remains on appeal. Here, the trial court's September 12, 2018 order purports to enforce the March 16, 2017 order[5] appointing the GAL and setting forth Mother's obligation to pay a certain share of his fees. Accordingly, we possess jurisdiction to review the September 12, 2018 order, and the court possessed jurisdiction to enter the order.

We now turn to the merits of the appeals at 758 MDA 2018 and 763 MDA 2018. Our standard of review in child custody cases is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014)

---

[5] The trial court entered two orders on March 16, 2017, one appointing the GAL, and one purporting to address Father's motions for reconsideration. This Court vacated only the latter order. ***See S.C.B.***, 179 A.3d 532 at 1 n.1 ("On the same date, the trial court entered an order appointing Samuel Andes, Esquire as [GAL] for . . . [Child.] As that order is not before us on appeal, we do not disturb it.").

(citation omitted). The factors that trial courts must consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a):

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

- 13 -

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

For ease of disposition, we begin by addressing Mother's claims. In her first claim, Mother contends the trial court erred by failing to consider all of the Section 5328(a) factors when reaching its decision. Mother notes that the court incorporated by reference its analysis of many of the factors from the order of August 3, 2016. Mother's Brief (763 MDA 2018) at 14-15. She asserts that it was impermissible for the court to incorporate by reference a portion of its analysis, rather than conduct a contemporaneous analysis of all of the factors. *Id.* We agree.

As Mother contends, this Court has held that a trial court must analyze all of the Section 5328(a) factors any time that it makes, or refuses to make, a change to an award of custody. *S.W.D.*, 96 A.3d at 401-07. We have held

that incorporating by reference a previous and outdated analysis of the factors is not sufficient. ***M.E.V. v. F.P.W.***, 100 A.3d 670, 681 (Pa. Super. 2014) ("[A] trial court may not merely advert to prior, manifestly outdated findings of fact in lieu of express and fully explained reconsideration of those factors in the light of any changes in the parties' circumstances that occurred after the prior ruling and attendant explanation."). Therefore, we must vacate the April 5, 2018 order, and remand for a complete and contemporaneous analysis of the Section 5328(a) factors, followed by the entry of a new custody order.

We now turn our attention to the remainder of Mother's claims. Because it is not clear whether the trial court's updated analysis of the Section 5328(a) factors will render these claims moot following remand, we proceed to address them on their merits. ***See J.R.M. v. J.E.A.***, 33 A.3d 647, 653 n.6 (Pa. Super. 2011) (noting that the appellant's second claim may become moot depending on what custody award the court orders after completing its analysis of the Section 5328(a) factors on remand, but reviewing the claim anyway).

In her second claim, Mother argues that the trial court erred by failing to give weighted consideration to the Section 5328(a) factors affecting the safety of Child. ***See*** 23 Pa.C.S.A. § 5328(a) ("In ordering any form of custody, the court shall determine the best interest of the child . . . giving weighted consideration to those factors which affect the safety of the child[.]"). Mother contends the court should have focused its analysis more heavily on her

allegations that Child suffers an excessive number of injuries while in Father's care. Mother's Brief (763 MDA 2018) at 15-16.

As we explained above, it is within the discretion of the trial court to make determinations of weight of the evidence and credibility. *V.B.*, 55 A.3d at 1197. This Court is bound by the court's factual findings when the record supports them. *Id.* Here, it is apparent that the court did not accept Mother's allegations that Father poses a threat to Child's safety. The court addressed Mother's concerns as follows in its discussion of Section 5328(a)(2): "Mother asserts that Father downplays the injuries to the child that she observes on [C]hild's return from Father. However, to her credit these are not 'emergencies' that require immediate court intervention." Trial Court Opinion, 4/5/18, at 5. The record supports this determination.

During the hearing, Mother described various injuries that she alleged Child suffered while in Father's care. However, the injuries Mother described resolved quickly and did not require medical attention. For example, Mother described an incident during which Child reported pain in his knee. Mother recalled, "[H]e couldn't even get up and down the steps. He would cry. He was limping." N.T., 3/8/18, at 134. She brought Child to the pediatrician, who diagnosed possible "unwitnessed trauma" to the knee but did not provide any treatment. *Id.* Indeed, the pediatrician's notes from the appointment indicate that Child was "in no acute distress" and was "able to jump up and down on both legs, and climb 2 steps on [a] step stool in [the] exam room."

Plaintiff's Exhibit 32. Mother acknowledged that Child's knee began feeling better the next day and that it is now fine. N.T., 3/8/18, at 134, 169.

Mother also described an incident during which Child reported that his head hurt, and stated, "dad hit me[.]" *Id.* at 135. Notably, despite Mother's apparent belief that Father struck Child in the head, causing him prolonged pain, she conceded that she did not take Child to the pediatrician, or take any other action to address this issue, other than discussing it with Father. *Id.* at 135-36. She noted that Child's "headache . . . resolved within a few hours[.]" *Id.* at 170. In light of this evidence, it was within the trial court's discretion to reject Mother's allegations as exaggerated or incredible. Therefore, the court had no duty to give those allegations weighted consideration.

In her third claim, Mother argues that the trial court committed an error of law by "relying on a public policy custom" when rendering its custody award. Mother's Brief (763 MDA 2018) at 16. She directs our attention to the court's citation to *Frank v. Frank*, 833 A.2d 194 (Pa. Super. 2003), for the proposition that "[t]he public policy for custody is to assure reasonable and continuing contact with both parents and the sharing of rights and responsibilities in child rearing." Trial Court Opinion, 4/5/18, at 6. Mother notes that the court's reference to *Frank* was more accurately a reference to 23 Pa.C.S.A. § 5301, which was part of the now-repealed predecessor to our current child custody statute, and which enumerated the prior statute's public

policy goals.[6] She contends "there are no acceptable 'presumptions' in favor of shared physical custody in Pennsylvania and a court's view of what it thinks is good public policy has no place in deciding custody cases." Mother's Brief (763 MDA 2018) at 17.

While Mother is correct in stating that Section 5301 is no longer in effect, and our law creates no presumption in favor of shared physical custody, we discern no error in the trial court's brief discussion of public policy. Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child. However, as the trial court in this case explained, the primary and overriding consideration in any custody case is the subject child's best interests, which may require the parents to exercise custody unequally. Trial Court Opinion, 4/5/18, at 6 ("In all custody cases, the custody determination is guided by the sixteen (16) custody factors to establish a custodial arrangement in the best interests of

---

[6] Our current child custody statute contains no statement of public policy. Section 5301 stated, in its entirety:

> The General Assembly declares that it is the public policy of this Commonwealth, when in the best interest of the child, to assure a reasonable and continuing contact of the child with both parents after a separation or dissolution of the marriage and the sharing of the rights and responsibilities of child rearing by both parents and continuing contact of the child or children with grandparents when a parent is deceased, divorced or separated.

23 Pa.C.S.A. § 5301 (repealed).

the child. In the utopian custody world parents would equally share custody. We do not live in this idyllic world[.]") (citation omitted). Because the court was aware of, and applied, the appropriate best interest standard, Mother is not entitled to relief on this claim.

Finally, in her fourth claim, Mother argues that the trial court erred by refusing to order a custody evaluation. Mother emphasizes that Dr. Milspaw recommended an evaluation and asserts that it was improper for the court to reject her uncontroverted expert opinion. Mother's Brief (763 MDA 2018) at 18-20. She insists that an evaluation was necessary in order to "explore [her] concerns for the [c]hild's safety." *Id.* at 20. We disagree.

Our rules of civil procedure render custody evaluations discretionary. *See* Pa.R.C.P. 1915.8(a) ("The court **may** order . . . any party to submit to and fully participate in an evaluation by an appropriate expert or experts.") (emphasis added). Thus, the trial court was under no obligation to order an evaluation in this case. It is true the court could not refuse to consider Dr. Milspaw's opinion recommending that an evaluation take place. ***M.A.T. v. G.S.T.***, 989 A.2d 11, 20 (Pa. Super. 2010) ("[W]hile a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record."). It is clear, however, that the court did consider Dr.

Milspaw's opinion; it simply found that opinion unconvincing. The following

discussion took place between the court and Dr. Milspaw during the hearing:

> Q. I understand you're recommending a custody evaluation take place. But my question is why. What are the complexities? What are the allegations? What are the concerns?
>
> A. [Mother] [h]as [a] number of safety concerns that she is -- it is difficult for her to trust [F]ather and to trust [C]hild's ability to be safe with [F]ather based upon her experiences with [F]ather as well as some historically documented aggression and assaults that she has knowledge of [F]ather's, that investigating those -- certain things were beyond the scope of what I would consider ethically my role to be as the co-parenting counselor.
>
> Father also has concerns of [M]other saying that she is just micromanaging and controlling and trying to keep his son from him which I believe are also legitimate concerns that also need to be explored.
>
> Q. And if the Court hears them, all those allegations in a public forum at the custody trial, you still recommend a custody evaluation?
>
> A. I believe that that could be helpful. But it is a good idea to have a psychologist who is able to weigh in, use their expertise, you know, to determine what the impact of that may be on the co-parenting relationship as well as their parenting style as well as the impact that could have psychologically and developmentally on the child himself.
>
> Q. So the Court is to give its decision-making authority over tho [sic] this psychologist?
>
> A. No, absolutely not. But I think it can be incredibly beneficial for yourself to have that knowledge and insight done so you can make a more fully informed decision.

N.T., 3/8/18, at 109-10.

Our review of the record supports the trial court's decision to reject Dr.

Milspaw's recommendation. Mother presented extensive testimony during the

hearing regarding Child's alleged excessive injuries while in Father's care. As a result, the court had ample evidence upon which it could make its decision regarding Mother's credibility and the purported danger Father poses to Child. It was reasonable for the court to conclude that an evaluation would have been unnecessary, as any evaluation addressing these issues would have been merely cumulative of the evidence already available to the court. Accordingly, no relief is due.

We next turn our attention to Father's claims. Once again, it is not clear whether the trial court's analysis of the Section 5328(a) factors will render these claims moot after remand, so we proceed to their merits. *J.R.M.*, 33 A.3d at 653 n.6.

In his first claim, Father contends the trial court erred by awarding custody of Child to the maternal grandparents. Father argues that the court, in effect, made the maternal grandparents parties to this action, despite the fact they never sought to intervene. Father's Brief at 22. He asserts the court also violated 23 Pa.C.S.A. § 5327(b), which creates a presumption that parents, rather than third parties, should be awarded custody of children, and claims the court impinged upon his constitutional right to make decisions concerning Child's care, custody, and control. *Id.* at 23-27.

Father mischaracterizes the contents of the trial court's orders. Starting with its August 3, 2016 order, the court directed that the maternal grandparents would serve as "the designated childcare providers unless

otherwise agreed to or by further Court Order. Father's request for outside care is rejected at this time as such social developments are not warranted." Order, 8/3/16, at 5. None of the court's subsequent orders, including the order on appeal in this case, awarded custody to the maternal grandparents. Instead, the record indicates that Mother and Father disagreed on who should provide childcare while Mother was working, and reflects that the court decided in Mother's favor by directing the maternal grandparents fill that role. The record supports this determination, as the maternal grandparents reside very close to both Mother and Father, and Father has no available family near the area. N.T., 3/8/18, at 9, 78-79, 113. Further, the maternal grandparents are retired and are readily available to provide care for Child. *Id.* at 182-84. Therefore, we conclude the court did not commit an error of law.

In his second and final claim, Father argues the trial court erred by admitting into evidence photographs purporting to depict the excessive number of injuries sustained by Child. Father maintains he did not have the opportunity to view the photographs in advance or to cross-examine Mother about them, and argues Mother failed to authenticate the photographs properly. Father's Brief at 29-33.

Our review of the record reveals the following. At the hearing, Mother's counsel informed the trial court that she would be presenting a series of photographs on a USB drive. N.T., 3/8/18, at 130-31. While Mother's counsel stated she had provided the photographs to Father's counsel in advance,

Father's counsel appeared confused and unaware of them. *Id.* at 131. As a result, Mother's counsel suggested they "move beyond these pictures, the sharing of these pictures at this time and come back to it." *Id.* at 132. At the conclusion of the hearing, the court and the parties' counsel discussed whether to admit the photographs into evidence. Father's counsel noted that Mother's counsel allowed him to view the photographs during a break. *Id.* at 221. The following exchange then took place:

> [Father's counsel]: . . . . I clicked on one which was a picture that appeared of the diaper rash. So I don't have a full understanding of what pictures are actually contained on that.
>
> Mother generally referenced photos on the stand, but there wasn't an opportunity -- an opportunity to contemporaneously review the photos that she is referencing and to cross-examine her testimony and the photos together. So based on that, I would object to the admission of exhibits I have no idea what they are, and there was no opportunity to cross-examine.
>
> THE COURT: I'm going to conditionally admit [the USB drive]. I haven't had a chance to look at it. I can't review it. I will have to review it in order to make a more fuller ruling on there. I know there was testimony. I don't know what's on here. But we will look, and we will get you an answer.

*Id.* at 221-22.

We agree with Father that Mother did not properly authenticate any of the photographs contained on the USB drive, which appears in the certified record before this Court. *See* Pa.R.E. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); *see also* Pa.R.E. 1007 ("The proponent may prove the content

of a writing, recording, or photograph by the testimony, deposition, or written statement of the party against whom the evidence is offered."). Thus, to the extent the trial court considered the photographs when conducting its analysis of the Section 5328(a) factors, it erred. Absent proper authentication and admission into evidence at a hearing, we direct the court not to consider the photographs when conducting its new and complete analysis of the Section 5328(a) factors on remand.

We now consider Mother's claims pertaining to the order of September 12, 2018, on appeal at 1688 MDA 2018. These claims are interrelated, so we address them together. Mother contends the trial court violated her right to due process by ordering her to pay the GAL's fees without holding a hearing or allowing her to respond to the GAL's motion requesting payment. Mother's Brief (1688 MDA 2018) at 14-18. Mother also argues the court directed her to pay the first $1,500 in fees to the GAL in its order of March 16, 2017, in lieu of contributing to the cost of Father's previously supervised visits with Child. *Id.* at 13. However, she continues, this Court vacated the March 16, 2017 order, because the court entered it without granting reconsideration expressly. *Id.* Based on this, Mother concludes that this Court also vacated her obligation to pay the GAL $1,500, and that the GAL now owes her a refund. *Id.* at 13-21.

In response to Mother's claims, the trial court issued a brief statement. The court asserts that it had the authority to appoint a GAL and apportion his

fees between the parties pursuant to our child custody statute. Statement in Lieu of 1925(a) Opinion, 1/2/19, at 2. The court also maintains that Mother waived any challenge to the GAL's fee requests by paying his initial invoice in July 2017. *Id.*

We agree with Mother that the trial court should not have ordered her to pay the GAL without first conducting at least a brief hearing. In the absence of Mother's agreement that the averments in the GAL's motion were correct, the amount of fees that she owes the GAL remains a disputed factual issue. *See*, *e.g.*, *Tecce v. Hally*, 106 A.3d 728, 732 (Pa. Super. 2014), *reargument denied* (Jan. 30, 2015), *appeal denied*, 125 A.3d 778 (Pa. 2015) ("The trial court made factual findings and credibility determinations without taking testimony, without receiving evidence and without allowing cross-examination. This was plain error."). Without such a hearing, the record does not support the court's order directing Mother to pay the GAL $500. *V.B.*, 55 A.3d at 1197. Therefore, we also vacate the order of September 12, 2018, and remand for the court to hold a hearing addressing the issue of the amount of fees, if any, Mother owes the GAL.

Based on the foregoing, we vacate the order of April 5, 2018, on appeal at 758 MDA 2018 and 763 MDA 2018, and remand for a complete analysis of the Section 5328(a) factors in accordance with this Opinion. We also vacate the order of September 12, 2018, on appeal at 1688 MDA 2018, and remand for a hearing to address Mother's challenge to the GAL's fee request.

J-A11037-19

J-A11038-19

Orders vacated.  Case remanded for further proceedings.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/20/2019