J-A28017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WILLIE N. SEABROOKS, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ESSENCE L. MASON | : | |
| | : | |
| Appellant | : | No. 2020 EDA 2023 |

Appeal from the Order Entered July 21, 2023
In the Court of Common Pleas of Pike County
Civil Division at No: 662-2021

BEFORE: OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.: **FILED MARCH 1, 2024**

Essence L. Mason ("Mother") appeals from the July 21, 2023 custody order that modified the existing custody order and awarded Willie N. Seabrooks III ("Father") primary physical custody and Mother partial physical custody of the parties' four-year-old daughter, N.S. ("Child"), born in March 2019. The order further maintained shared legal custody. After careful review, we affirm.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] To the extent Mother additionally appeals the April 26, 2023 order denying her motion for transfer of venue and jurisdiction to Wake County, North Carolina, we conclude that this issue is waived insofar as she failed to raise the issue in the Statement of Questions Involved portion of her brief and failed to offer any such discussion of it in the Argument section of her brief. **_See In re M.Z.T.M.W._**, 163 A.3d 462, 465-66 (Pa. Super. 2017) (citations omitted)
*(Footnote Continued Next Page)*

The trial court aptly stated:

The parties hereto are the natural parents of [Child] who is the subject of this custody action. The case was initiated on July 2, 2021 with [Father]'s filing of a *pro se* complaint for custody alleging that [Mother] had left the parties' residence [in] East Stroudsburg, Pike County, Pennsylvania with [Child] and moved to North Carolina without [Father]'s consent or leave of court, and with [Father] seeking shared legal and partial physical custody.

On November 9, 2021, [Mother] filed a counterclaim for custody . . . averring that she had moved to North Carolina due to domestic violence. On December 16, 2021, [Father] filed an answer and new matter to [Mother]'s counterclaim again averring that [Mother] had impermissibly moved to North Carolina with [Child] and . . . denying [Mother]'s allegations of domestic violence. . . .

Trial Court Opinion, 9/1/23, at 1-2 (cleaned up).

This ultimately resulted in a May 16, 2022 custody order ("existing custody order").

. . .

5. Under the May 16, 2022 custody order, the parties ha[d] shared legal custody and shared physical custody of [Child] on an alternating week-to-week basis.[2]

---

(explaining this Court will not review an appellant's claim unless it is included in the statement of questions involved, developed in his or her argument, and supported by citation to relevant legal authority).

[2] Less than two weeks later, on May 27, 2022, Mother filed an emergency petition for special relief raising allegations of physical abuse, and an order was entered suspending Father's custodial time pending hearing. Pursuant to order of June 3, 2022, Mother withdrew her petition, and Father's custodial time was restored. Thereafter, upon his request, Father was awarded make-up time.

6. Mother . . . failed to produce [Child] for the court-ordered alternating week visits on several occasions.[3]

7. Mother has made reports to Pike County Children and Youth Services, Monroe County Children and Youth Services, and the Pennsylvania State Police during and/or following Father's periods of physical custody with [Child].

8. None of the reports made to Children and Youth agencies have been deemed "indicated" or "founded," and no criminal charges have been filed against Father.

9. On April 25, 2023, Mother filed an emergency motion for special relief and a petition to modify custody based on her alleged concerns for [Child]'s welfare while with Father.[4]

10. Mother [requested] primary physical custody of [Child] with supervised physical custody for Father [due to concerns of substance abuse by Father and/or physical abuse of Child].

11. On April 27, 2023, the court scheduled a pre-trial conference on Mother's filings for May 10, 2023, and a custody trial for July 3, 2023.

---

[3] Mother confirmed that she withheld Child from Father on the following dates: October 14, 2022 through October 21, 2022; November 11, 2022 through November 18, 2022; November 25, 2022 through December 2, 2022; December 23, 2022 through December 30, 2022; January 6, 2023 to January 13, 2023; January 20, 2023 through January 27, 2023; February 3, 2023 through February 10, 2023; February 17, 2023 through February 24, 2023. *See* N.T., 7/3/23, at 92-94. Father additionally testified that Mother withheld Child April 14, 2023 through April 21, 2023 and April 28, 2023 through May 5, 2023. *See id.* at 155. Father filed a petition for contempt on May 12, 2023, due to Mother's withholding of Child.

 The court held an evidentiary hearing on May 31, 2023, and found Mother in contempt. Mother was sentenced to a period of seven days incarceration with the provision that she may purge herself by bringing Child on June 2, 2023, for Father to resume his custodial time.

[4] Mother additionally filed a motion to transfer venue and jurisdiction which the court denied pursuant to order of May 26, 2023.

12. On May 3, 3023, Father filed a counter-petition for modification of custody seeking sole legal and physical custody of [Child] based upon Mother's constant alleged ongoing interference with his custody rights and relationship with [Child].

13. On May 10, 2023, at the pre-trial conference, Mother requested that Father undergo a 10-panel hair follicle drug screening at her expense. The same was incorporated into the May 11, 2023 court order, which resulted from the pre-trial conference.[5]

14. Mother did not pay for Father's drug test within the designated time frame in the May 11, 2023 court [order].

15. Father did not go for the drug test as Mother had not made timely payment for same.

16. Mother credibly explained why her payment for the drug test was a few days late based on a lag in her receipt of the May 11, 2023 order.

17. At the conclusion of the [subject proceeding] and with the agreement of both parties, the court kept the record open to allow Father to take the 10-panel hair follicle drug test so that the court could consider the results in making these conclusions.

. . .

Order, 7/21/23 (cleaned up).

The trial court held a custody trial on July 3, 2023. Mother and Father were each present and represented by counsel. Mother proffered the testimony of her mother, S.M. ("Maternal Grandmother"), as well as Clinical

---

[5] The court notes that negative results were received on July 14, 2023. Trial Court Opinion, 9/1/23, at 3, ¶ 19. While not included in the certified record, the test results are undisputed.

Mental Health Counselor Associate Bryanna Smith, Child's treating counselor. While offered as an expert in the areas of clinical mental health and psychology, the court declined to accept Ms. Smith's testimony in that capacity. Instead, the court permitted her testimony as a "North Carolina Licensed Health Counselor Associate who has provided services to [Child]." N.T., 7/3/23, at 39, 43. Father proffered the testimony of his mother, T.W. ("Paternal Grandmother"), as well as Adrianna Stares of Monroe County Children and Youth Services and Christine Irwin of Pike County Children and Youth Services. Mother and Father also each testified on their own behalf. The court additionally interviewed Child *in camera*.

As summarized by the trial court, the testimony revealed the following:

. . .

25. Mother resides with her parents and brother [in] Morrisville, North Carolina.

26. Mother is a phlebotomist and works full time.

27. Mother scheduled a time to enroll [Child] in pre-K in North Carolina in August.

28. [Maternal Grandmother] rents the home where Mother resides.

29. Maternal Grandmother watches [Child] while Mother works.

30. Father resides [in] East Stroudsburg, Pike County, Pennsylvania, with his [parents] and brothers.

31. Father sends [Child] to Precious Moments pre-K in Stroudsburg, Pennsylvania from approximately 6:30 a.m. until 4.00 p.m. Monday through Thursday on his weeks of custody.

- 5 -

32. [Child] takes swim lessons at the YMCA in Stroudsburg twice weekly when with Father.

33. Father is employed full-time [at night] as a warehouse packer and works a second job [during the day as a] hotel manager. . . .

34. Father raised concerns over Mother's alleged failure to care for [Child]'s teeth.

35. Father has been with his current significant other for approximately one year but has not had her spend time with [Child].

36. [Paternal Grandmother] testified that she has done many custody exchanges on Father's behalf.

37. Paternal Grandmother testified that someone is always home at their house to care for [Child].

38. Paternal Grandmother testified that Pike County and Monroe County Children and Youth Services members regularly appear at her home when Father has custody of [Child].

39. Paternal Grandmother testified that [Child] had so many cavities when she was taken to the dentist that they had to be filled while she was under sedation.

40. Adrianna Stares of Monroe County Children and Youth Services testified that the Agency has been to Father's home and has no concerns.

41. Christine Irwin of Pike County Children and Youth Services testified that all general requests made of the Agency have been invalidated and that the Agency has been to Father's home and has no concerns.[6]

42. According to Ms. Irwin, [Child] has never confirmed any of the allegations received by the Agency.

_____

[6] Of 25 referrals since July 2022, nine, all from June 2023, remained pending at the time of the subject proceeding. *See* N.T., 7/3/23, at 127; Respondent's Exhibit 1. Those which had been resolved were all either unfounded or invalidated. *See* N.T., 7/3/23, at 128.

. . .

46. Maternal Grandmother and Paternal Grandmother are actively involved in [Child]'s life.

Order, 7/21/23.

By order dated and entered July 21, 2023, the trial court modified the existing custody order and awarded Father primary physical custody and Mother partial physical custody of Child. Specifically, the court granted Mother custodial time as follows:

3. Mother shall have partial physical custody of [Child] as follows:

i. Columbus Day weekend from the Friday before Columbus Day at 6:00 p.m. until Columbus Day Monday at 6:00 p.m.;

ii. Thanksgiving from the Wednesday before Thanksgiving at 6:00 p.m. until the Sunday after Thanksgiving at 6:00 p.m.;

iii. Christmas/New Year from 6 p.m. on December 23 until January 1st at 6:00 p.m.

iv. President's Day weekend from the Friday before the holiday at 6:00 p.m. until the President's Day Monday at 6:00 p.m.

v. Easter from the Wednesday before Easter at 6:00 p.m. until Easter Sunday at 6:00 p.m.

vi. Mother's Day weekend from the Friday before Mother's Day at 6:00 p.m. until Mother's Day Sunday at 6:00 p.m.

vii. Starting in 2024, from the first Saturday in July at 6:00 p.m. until the following Saturday at 6:00 p.m.

> > viii. Starting in 2024, from the first Saturday in August
> > until the following Saturday at 6:00 p.m.

Order, 7/21/23, at 12, ¶ 3 (cleaned up).  The court further maintained shared legal custody.   However, the court named Father Child's medical and educational decision-maker should there be disagreement.

On August 2, 2023, Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  Thereafter, on September 1, 2023, the trial court filed a responsive Rule 1925(a) opinion.

On appeal, Mother raises the following issue for our review:

> Did the [trial court] abuse its discretion and fail to further the best interests of [Child] in ruling that [M]other, who has been her daughter's primary and at times sole caretaker since birth, will have only limited custodial time moving forward, with primary custody for [F]ather – a man who works two jobs, including several overnight shifts per week, and who has continually been investigated for abuse and neglect – within nine "open investigations" pending even at time of the custody hearing below?

Mother's Brief at 1.

We review custody orders for an abuse of discretion.  *See R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019).  We will not find such an abuse merely because we would have reached a different conclusion.  *See id.*  Rather, an abuse of discretion occurs only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. *See id.*

Moreover, our scope of review is broad. ***See id.*** Because this Court does not make independent factual determinations, however, we must accept findings of the trial court that are supported by competent evidence of record. ***See S.C.B. v. J.S.B.***, 218 A.3d 905, 913 (Pa. Super. 2019). Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. ***See id.*** We are not, however, bound by the trial court's deductions or inferences. ***See id.***

"Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law[] or are unreasonable in light of the sustainable findings of the trial court." ***E.D. v. M.P.***, 33 A.3d 73, 76 (Pa. Super. 2011) (quoting ***A.D. v. M.A.B.***, 989 A.2d 32, 35-36 (Pa. Super. 2010)). As we stated in ***King v. King***, 889 A.2d 630, 632 (Pa. Super. 2005), "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." (quoting ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa. Super. 2005)).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014). "The best-interests standard, decided on a case-by-case basis, considers all

factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *M.J.N. v. J.K.*, 169 A.3d 108, 112 (Pa. Super. 2017). To that end, the Child Custody Act sets forth sixteen factors that a court must consider before making any custody determination. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id.* at 468 (quoting *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013)). The statutorily required factors are as follows:

**§ 5328.  Factors to consider when awarding custody.**

   **(a)  Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

      (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

      (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

      (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

      (3) The parental duties performed by each party on behalf of the child.

      (4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In assessing these factors,

[a] trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." **S.W.D.**, [96 A.3d at 401]. **See also** 23 Pa.C.S.[A.] § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M.**[, 63 A.3d at 336.].

**R.L.**, 209 A.3d at 395. While a parent's role in caring for a child may be considered in light of the statutory factors, "the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable." **M.J.M.**, 63 A.3d 331 at 339.

In the case *sub judice*, the trial court addressed and analyzed the custody factors pursuant to Section 5328(a). **See** Order, 7/21/23, at 7-11. The court did not determine that any factors were in favor of Mother. Rather, the court determined that all factors were in favor of Father, neutral, or not applicable. **See id. See id.** The court found determinative Mother's obstruction of Father's relationship with Child which was relevant to Section 5328(a)(1), (2), (4), (8), (9), (10), and (16). The court found as follows:

> The **first custody factor** requires the court to consider "which party is more likely to encourage and permit frequent and continuing contact between the child and another party." 23 Pa.C.S.A. § 5328(1). Through her conduct, Mother has shown her unwillingness and inability to allow [Child] to have frequent and continuing contact with Father. Without leave of court, Mother has repeatedly withheld [Child] from Father and denied him his periods of physical custody. Based on the trial record, Father is more likely to encourage and permit frequent and continuing contact between Mother and [Child].
>
> This factor weighs in favor of Father.

The **second custody factor** requires the court to consider "the present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child, or an abused party, and which party can better provide adequate physical safeguards and supervision of the child." 23 Pa.C.S.A. § 5328(2). Father has not made any allegations that [Child] has been abused by Mother or any of Mother's household members. Mother has repeatedly alleged that [Child] is physically abused by Father and/or his household members during Father's periods of physical custody. To date, all of the same have been unfounded. Pike County and Monroe County Children and Youth Services have repeatedly appeared at Father's residence during Father's periods of physical custody and have reported that they do not have any concerns about Father's home or the environment. Mother testified that she intends to continue making reports of abuse to the authorities if Child has any bruises or anything of concern to her. Mother's reporting of past concerns has not been rational or reasonable.[7]

Mother does not have the insight to see the negative effects of her ongoing reports on both Child and Father. Not only do the repeated and unsupported allegations disrupt Father's relationship with his daughter, but they are traumatic for [Child]. Child should not see social workers and/or law enforcement officers unnecessarily coming to her father's house when she is with him.

This factor weighs in favor of Father.

. . .

The **fourth custody factor** is "the need for stability and continuity in the child's education, family life, and community life." 23 Pa.C.S.A. § 5328(4). Father is better suited to provide stability and continuity in [Child]'s life. Father lives in Pennsylvania, where [Child] was living since her birth. Father works two jobs and can financially support [Child]. Father's home has been investigated by both Pike County and Monroe County Children and Youth Services, who have deemed the home and environment suitable for [Child]. Paternal Grandmother is involved in community

_____

[7] Mother freely admitted that she made frequent and continued reports to child service agencies, as well as the police. ***See*** N.T., 7/3/23, at 96-98.

activities which she shares with [Child]. [Child] is already in a preschool program with swim lessons in place when she is with Father.

Mother moved a significant distance away from Father. Mother has withheld [Child] from Father and has disrupted any continuity and stability in Child's life.

This factor weighs in favor of Father.

. . .

The **eighth custody factor** is any "attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm." 23 Pa.C.S.A. § 5328(8). There was no evidence that Father has attempted to turn [Child] against Mother. There was overwhelming evidence that Mother, through her conduct, has attempted to turn [Child] against Father. [Child] has been withheld from Father. [Child] has seen social workers come to Father's home when she is there. Mother's actions are damaging [Child]'s relationship with Father. The appropriate authorities vetted the allegations made by Mother, and she has been unable to accept supported and documented findings made by the authorities.

This factor weighs heavily in favor of Father.

The **ninth custody factor** is "which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs." 23 Pa.C.S.A. § 5328(9). Father demonstrated that he is more likely to maintain a loving and nurturing relationship with [Child] sufficient to meet her emotional needs. Mother's constant baseless accusations against Father do not allow her to meet [Child]'s emotional needs.

This factor weighs in favor of Father.

The **tenth custody factor** is "which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." 23 Pa.C.S.A. § 5328(10). [Child] does not have any recognized special needs. Both parties have demonstrated their ability to attend to [Child]'s

daily physical and educational needs. Father is more likely to attend to [Child]'s emotional and developmental needs by allowing her to have a healthy relationship with her parents and her extended family.

This factor weighs in favor of Father.

. . .

The **sixteenth factor** allows the court to consider "any other relevant factor." 23 Pa.C.S.A. § 5328(16). We find Mother's attempts to interfere with Father's relationship with [Child] to be a very relevant factor, as discussed among the enumerated factors.

*Id.* at 7-11 (cleaned up) (bold in original).

Mother argues that the record does not support the trial court's factual findings and its determinations regarding credibility and weight of the evidence. *See* Mother's Brief at 34-53. Specifically, in assailing the court's examination of the custody factors, including those decisive factors noted *supra*, she asserts that the court ignored relevant evidence. Mother contends that the court disregarded testimony of herself, Maternal Grandmother, and Ms. Smith with regard to abuse and/or neglect of Child. *See id.* at 34-43, 50 ("These conclusions by [the court] disregarded the testimony of not just [M]other, but [Maternal G]randmother and [Ms.] Smith, which show the legitimate, child-safety reasons for [M]other's decisions. The court's findings are manifestly unreasonable as shown by the evidence."). Mother maintains that the court disregarded that she was Child's primary and/or sole caretaker. *See id.* at 43-49 ("[The court] turned a blind eye to the first three-plus years of [Child]'s life during which [M]other, not [F]ather, was the primary

- 15 -

caretaker."). She further suggests that the court was punishing her for relocating to North Carolina. *See id.* at 47-48. Moreover, she posits that the court disregarded testimony that Father was working two jobs "with many overnight shifts per week."[8] *Id.* at 51 (discussing Section 5328(a)(12)).

In support of its examination of the custody factors, the court explained in its Rule 1925(a) opinion:

> The making of reports to child service agencies alone is not persuasive. The agency vets the reports that are made to them. [Father] was the one who called witnesses from the child service agencies who had received these reports to testify on his behalf. There were no findings made as a result of the reports to child service agencies which raised concern for us. [Mother]'s reports have resulted in caseworkers and law enforcement officers appearing at [Father]'s home just about every time he has exercised physical custody of the child. We did not find [Mother] to have a sufficient factual basis to make the multiple reports and we did find that [Mother]'s unsupported reports have interfered with [Father]'s ability to have a relationship with [Child] to [C]hild's detriment.

Trial Court Opinion, 9/1/23, at 5.

The court noted that the two witnesses from the child service agencies, Ms. Stares and Ms. Irwin, testified that they observed no issue with Father or his home. *See id.* at 5-6. Significantly, Ms. Irwin explained that, upon receipt

---

[8] To the extent Mother argues that certain evidence was improperly excluded, this issue is waived as Mother failed to raise such issue in the Statement of Questions Involved portion of her brief. *See M.Z.T.M.W.*, 163 A.3d at 466 (reiterating that issues not included in a concise statement of errors complained of on appeal and statement of questions involved are waived).

- 16 -

of each report, the agency went out to see Child and/or to the home.[9]  *See* N.T., 7/3/23, at 129, 136-137.  She further testified that Child "has denied any of the allegations."  *Id.* at 141.  The court determined these witnesses "to be unbiased and credible.  Their testimony supports our conclusion that [Father] can offer [C]hild a safe, stable, and consistent home."  Trial Court Opinion, 9/1/23, at 6.  Moreover, to the extent the allegations against Father included claims of substance abuse, the court "did not find any credible evidence of drug abuse by [Father]."  *Id.* at 7.

Further, inasmuch as Mother maintains that she was Child's primary caretaker, the court highlighted the finding of contempt against Mother for withholding Child from Father.  The court stated, "But for [Mother]'s contemptuous actions, [Child] would not have been with [Mother] on a near daily basis."  *Id.*

Because Mother's issues, at their core, dispute the trial court's determinations regarding credibility and weight of the evidence, they fail.  *See S.C.B.* 218 A.3d at 913 (reiterating that we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand).  Further, in custody cases, it is well-established that it is

---

[9] As Child was in North Carolina at the time of some of the reports, Ms. Irwin testified that the assigned caseworker did a video visit with Child.  *See id.* at 129.

within the purview of the trial court to determine which statutory factors "are most salient and critical." ***E.B.***, 209 A.3d at 460.

Instantly, the trial court's consideration of the custody factors was careful and thorough. After careful review of the record, we hold that the court's factual findings are supported by the record, and the court's conclusions in light of those findings are reasonable.

Notably, Ms. Stares and Ms. Irwin, whom the court found to be credible, each testified that there were no concerns with Father or his home and that all non-pending referrals were unfounded and/or invalidated. ***See id.*** at 121-23, 128-29. Ms. Irwin testified, "We have no evidence that [Father] is abusing any substances."[10] ***Id.*** at 141. She further confirmed that Child denied all allegations of physical abuse and/or physical discipline, noting that Child was interviewed by both the caseworker as well as the agency's director. ***Id.*** at 141. In response to inquiry regarding allegations that Father's home was unfit, Ms. Irwin further stated, "There was recently an allegation [that the home was unkempt] and [at] the last home visit[,] which was completed by our [d]irector, the home was completely went through and there were no concerns for the condition of the home." ***Id.*** Moreover, Father flatly denied all allegations of abuse. ***See id.*** at 158.

---

[10] As further indicated *supra*, there is no dispute that the results of Father's 10-panel drug test submitted following the subject proceeding were negative.

- 18 -

Mother conceded to recurrent reports to child service agencies, which, but for those still pending, had been deemed to be without merit. ***See id.*** at 96-98. She further admitted to withholding Child from Father on numerous occasions. ***See id.*** at 92-94. Notwithstanding, Mother was unapologetic and expressed her intention to continue to do so. ***See id.*** at 92-98.

Thus, as the record supports the court's findings, we discern no abuse of discretion. ***See S.C.B.***, 218 A.3d at 913; ***King***, 889 A.2d at 632.

For the foregoing reasons, we affirm the trial court's orders.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/1/2024