J-A09017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| PHILIP MOORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EMOGENE RENEA SNYDER | : | |
| | : | |
| Appellant | : | No. 1515 MDA 2022 |

Appeal from the Order Entered September 28, 2022
In the Court of Common Pleas of York County
Civil Division at No(s):  2019-FC-1066-03

BEFORE:  PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED: JUNE 21, 2023**

Emogene Renea Snyder ("Mother") appeals *pro se* from the September 28, 2022 order[1] that reaffirmed the May 20, 2022 custody modification order awarding Philip Moore ("Father") primary physical custody of the parties' daughter, E.M., born in July of 2017, and Mother partial physical custody during the school year.  The order awarded the parties shared physical custody during the summer.  We affirm.

---

[1] Mother timely filed a motion for reconsideration on June 13, 2022, which the trial court expressly granted by order filed on June 17, 2022.  A hearing occurred on August 12, 2022, and by order entered on September 28, 2022, the court found "no need to change the underlying order."  Trial Court Order, 9/28/22, at 2.  Because the trial court expressly granted reconsideration, Mother's appeal from the September 28, 2022 order is timely.  *See* Pa.R.A.P. 1701(b)(3).

We glean the following facts and procedural history from the certified record. Father is a self-employed physician and resides in the West Shore School District in York County. *See* Joint Stipulation of Facts, at ¶¶ 7, 9. Mother has a degree in psychology and began a doctorate program in 2019, but she has not completed it. *See* N.T., 4/4/22, at 63-65. She works remotely as a mental health professional. *See* Joint Stipulation of Facts, at ¶¶ 11-14. Mother rents a townhome in Cumberland County in the East Pennsboro Township School District, which is a distance of approximately nine miles from Father's residence. *See id.* at ¶ 8; *see also* N.T., 3/1/22, at 227-228; Trial Court Opinion, 5/27/22, at 13. Mother is divorced and shares two sons with her ex-husband who were ages twelve and eight at the time of the subject proceeding. *See id.* at ¶ 6. Father never married, and E.M. is his only child. *See id.* at ¶ 5. As such, although Father and Mother cohabited, they never married.

There is no dispute that this is a "high conflict" custody case, which has involved extensive litigation since Father initiated it in June 2019. *See* N.T., 8/12/22, at 54. The record reveals that the parties' relationship is marred by distrust and hostility.

By *interim* order dated July 23, 2019, the parties were awarded shared legal and physical custody on a 2-2-3 basis. Mother alleged that Father abused alcohol, and Father acknowledged that, ten years prior, he was convicted of a criminal charge of driving under the influence. Therefore, the

same *interim* order directed Father to undergo a drug and alcohol test at Mother's expense. Father tested positive for alcohol, but there is no indication in the record that his level was above the legal limit. Nonetheless, by order dated October 17, 2019, the court directed Father to begin using Soberlink, a breathalyzer application. The order provided that Mother may request Father to submit to a test within one hour of receiving custody of E.M., and at one additional time during his custodial period. Father was required to submit to the test within thirty minutes of Mother's request.

Following a custody trial, the court issued a final order on October 29, 2020 ("the existing custody order"), when E.M. was three years old, which Mother timely appealed, but subsequently withdrew. The existing custody order awarded the parties shared legal custody; Father primary physical custody; and Mother partial physical custody on a two-week rotating schedule from Thursday evening until Monday morning in week one and Thursday evening until Friday evening in week two.

The order also directed the parties to "make every effort for the exchange to occur at" E.M.'s daycare. **See** Order, 10/29/20, at 5. In the event that E.M. is not in daycare at the time of a custody exchange, the court directed that the exchange should occur at a Sheetz gas station in Mechanicsburg, Pennsylvania. The court provided details regarding the manner in which E.M. was to be exchanged, including, but not limited to, that the parties do not communicate during the custody exchange. **See id.** at 6.

Further, the court directed that the parties engage in individual counseling and co-parenting counseling. The court also directed the parties to select a therapist for E.M. The court appointed Leanne M. Miller, Esquire, as a "parenting coordinator" to assist the parties in making all required appointments and in resolving any issues that may arise out of the existing custody order.

Finally, the court directed Father to continue complying with the prior order regarding the Soberlink device. The court concomitantly permitted Father to request that Mother submit to one drug test per month.

The trial court related the remaining procedural history, as follows.

On March 26, 2021, Father filed a petition for special relief requesting sole legal custody and sole physical custody pending an evaluation of Mother, reallocation of the costs of the parenting coordinator to Mother, inclusion of the nanny in the non-disparaging language of the custody order, and payment of [Father's] legal fees and costs. On March 31, 2021, Father filed his petition for modification of custody and for contempt, which is presently before the court. On April 19, 2021, [the trial] court appointed Heather Reynosa, Esquire, as Guardian Ad Litem [("GAL")] for the child. On April 19, 2021, Mother filed an answer to Father's petition for special relief as well as counterclaims for special relief and for contempt.

On April 28, 2021, a status conference was held that included attorneys representing York County Children, Youth and Families and the York County District Attorney's Office to discuss interviews of the child. On May 4, 2021, Father filed an answer to Mother's counterclaims for special relief and contempt. On May 6, 2021, [the trial] court entered an order resolving both parties' special relief petitions.

Trial Court Opinion, 5/27/22, at 1-2 (cleaned up). The court resolved the special relief petitions by, *inter alia*, prohibiting the parties from taking E.M.

for a medical examination of any kind without first speaking to the other parent, and, if a disagreement arises, they were directed to discuss it with the parenting coordinator or the GAL. Further, the court directed the parties to comply with prior orders by immediately commencing co-parenting counseling and individual counseling. *See* Order, 5/6/21, at 2-3.

> The following procedural history then occurred:
>
> On August 9, 2021, a status conference was held *via* Zoom. On November 6, 2021, the parties adopted an interim custody stipulation wherein the parties agreed to participate in a co-parenting program and co-parenting counseling with Kim Melhorn, M.S. On November 30, 2021, the parties agreed to reappoint [Attorney] Miller as the parties' parenting coordinator for another twelve-month term. On January 4, 2022, another status conference was held *via* Zoom. Finally, a custody trial was held on February 28, 2022, March 1, 2022, April 4, 2022, April 5, 2022, and May 11, 2022.

Trial Court Opinion, 5/27/22, at 3 (cleaned up).

E.M. was four years old at the time of the custody trial, and the trial court interviewed her *in camera*. Father testified on his own behalf. He no longer requested sole legal or physical custody but sought to alternate custody for the Christmas and Thanksgiving holidays; to alternate the responsibility of taking E.M. to her medical appointments and to her court-ordered therapy; and that the custody exchanges occur at E.M.'s school. *See* N.T., 2/28/22, at 83-84. Father also presented the testimony of Joan Weston, E.M.'s nanny since she was three weeks old, *via* Zoom; and the GAL, who recommended that the parties (1) share legal custody; (2) Father maintain primary physical custody during the school year; and (3) the parties share physical custody

during the summer on an alternating weekly basis. *See* Addendum to GAL Report, at 10-13.

Mother testified on her own behalf. She requested shared legal and physical custody on a 2-2-3 basis. *See* N.T., 4/4/22, at 58. Mother also presented the testimony of Chris Fonseca, *via* Zoom, a manager at Soberlink; Emogene Diane Powell, E.M.'s maternal grandmother; Karen Eichelberger, Mother's former neighbor; and Karry Felix, Mother's current neighbor.

In a twenty-five-page order entered on May 20, 2022, the trial court awarded the parties shared legal custody; Father primary physical custody; and Mother partial physical custody during the school year on alternating weekends from after school on Thursday until the start of school on Monday and on alternating Thursdays after school until the start of school on Friday. With respect to the summer months, the order awarded the parties shared physical custody on an alternating weekly basis. The order also provided a holiday schedule. Further, the order contained numerous provisions concerning, in part, communication protocols for the parties, individual counseling, and the parties' utilization of Soberlink for testing Father, the cost of which shall be shared equally by the parties.

On June 13, 2022, Mother timely filed a motion for reconsideration, wherein she requested that the court reopen the record to provide Mother the opportunity to present testimony from Kim Melhorn, the parties' co-parenting counselor since October of 2021. The trial court granted Mother's motion on

June 17, 2022, and the court received Melhorn's testimony on August 12, 2022. By order entered on September 28, 2022, the court reaffirmed its custody order, which Mother, acting *pro se*, timely appealed on October 28, 2022. On the same date, Mother filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2] The trial court filed a Rule 1925(a) opinion on November 23, 2022.

Mother raises the following issues for review, which we have re-ordered for ease of disposition:

> 1.      Did the trial court fail to provide justification and abuse judicial discretion for the decision to place Father as the primary physical custodian of the child, which [contradicted] the evidence at trial for each of the custody factors?

_____

[2] In her 1925(b) statement, Mother raised 28 issues in 11 pages, which is by no means a "concise statement." We could find all issues waived on that basis alone. ***See Jones v. Jones***, 878 A.2d 86 (Pa. Super. 2005) (holding that a seven-page, twenty-nine issue statement resulted in waiver); ***Kanter v. Epstein***, 866 A.2d 394, 401 (Pa. Super. 2004) (holding that "[b]y raising an outrageous number of issues" in a Rule 1925(b) statement, an appellant impeded the trial court's ability to prepare an opinion addressing the issues on appeal, thereby effectively precluding appellate review"). In her appellate brief, Mother reduced the number of issues she raises to nine, but this is still excessive. Moreover, Mother failed to follow numerous rules of appellate procedure. ***See*** Father's Brief at 20-23. Because this child is young and the parties have been in court several times already, we caution Mother moving forward in this litigation. "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***In re Ullman***, 995 A.2d 1207, 1211–1212 (Pa. Super. 2010). Accordingly, *pro se* litigants must comply with the procedural rules set forth in the Pennsylvania Rules of Court; if there are considerable defects, we will be unable to perform appellate review. ***Commonwealth v. Tchirkow***, 160 A.3d 798, 804-805 (Pa. Super. 2017) (citation omitted).

2.  Did the trial court abuse its discretion and show judicial bias when it ordered that the parents could have a shared custody schedule during the summer months, but not during the school year, based on a belief by the trial court and GAL that the child needs a primary home during the school year?

3.  Did the trial court show judicial biases when it included Father's family living in Michigan as part of the reasoning for the sustained custody schedule, but excluded Mother's family and the child's siblings?

4.  Did the trial court fail to operate in the best interest of the child and abuse its discretion when it failed to prioritize the child's safety, regarding Father's current and past drug and alcohol concerns?

5.  Did the trial court show judicial biases regarding Mother's employment status, when employed by the U.S. Department of Human Services by removing shared custody schedule of child, but then allowing Father to sustain primary custody of child when his employment and work schedule was proven to be more rigorous than Mother's?

6.  Did the trial court overreach its authority when it denied or restricted child abuse interviews with [crimes against children ("CAC") investigators] and other authorities in an active child abuse [investigation]?

7.  Did the trial court abuse its discretion when it appointed [the] GAL. . . , essentially as a "gatekeeper" giving her investigative authority in child abuse cases?

8.  Did the trial court use status conferences to intentionally delay the motion for modification, rather than using the status conferences to expedite litigation?

9.  Did the trial court show judicial biases when it ordered the child to attend kindergarten in Father's school district rather than Mother's long-established school district?

Mother's Brief at 7-9 (cleaned up).

We review custody orders for an abuse of discretion. ***See R.L. v. M.A.***, 209 A.3d 391, 395 (Pa. Super. 2019). We will not find an abuse of discretion merely because we would have reached a different conclusion. ***See id***. Rather, we will find an abuse of discretion if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. ***See id***.

Our scope of review is broad. ***See id***. Because this Court does not make independent factual determinations, however, we must accept findings of the trial court that are supported by competent evidence of record. ***See S.C.B. v. J.S.B.***, 218 A.3d 905, 913 (Pa. Super. 2019). Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. ***See id***. We are not bound by the trial court's deductions or inferences. ***See id***.

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014). Once a custody arrangement is established by order, a court may modify it at any time upon a party's petition if it serves the best interests of the child. ***See*** 23 Pa.C.S. § 5338. To that end, the Child Custody Act sets forth sixteen factors that a court must consider before making any custody determination, including a modification of a custody order. ***See E.B. v. D.B.***, 209 A.3d 451, 460 (Pa. Super. 2019). "It is within the trial court's purview as the finder of

fact to determine which factors are most salient and critical in each particular case." *Id*. (citation omitted). The statutorily required factors are as follows:

**§ 5328. Factors to consider when awarding custody.**

**(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Instantly, the trial court set forth its consideration of the statutory factors in its opinion dated May 27, 2022. *See A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (providing that trial courts shall set forth the mandatory assessment of Section 5328(a) best interest factors "prior to the deadline by which a litigant must file a notice of appeal").

The court based its custody decision on "[M]other's lack of judgment and insight about how her behavior affects the child." Trial Court Opinion, 5/27/22, at 17. The court recognized "Father's lack of candor, his lack of

- 11 -

credibility, and his absenting himself from discussions with Mother," all of which it concluded "impact [Father's] effective communication with Mother." *Id.* at 7, 17. However, the court concluded, "in terms of weight, Mother's lack of judgment and insight has more of a direct impact on the child." *Id.*; *see also* N.T., 8/12/22, at 54. These findings determined the weight that the court placed upon the statutory factors.

Specifically, the court weighed Section 5328(a)(1), (8), (10), (16) in Father's favor, and it "gave substantial weight" to (8). *See* Trial Court Opinion, 5/27/22, at 10, 12. The court weighed (6) in Mother's favor and, as best we can discern, it weighed (14) slightly in her favor.[3] The court equally weighed (3), (4), (5), (9), (12), (13), and (15) between the parties. The court found the remaining factors inapplicable. *See id.* at 6-16.

With respect to Section 5328(a)(8), the attempts of a parent to turn child against the other parent, the court concluded that it "has serious concerns about Mother's insight as well as judgment and how her actions

---

[3] With respect to Section 5328(a)(14), the court determined, "Both parties played games in getting alcohol testing set up and both parties continue to play games with the testing. Father has failed to set up the text messaging [on the Soberlink application], but then wants to use the excuse that he did not get the email [requesting that he take the breathalyzer test] for his failure to timely complete the test. On the other hand, Mother seems to be requesting tests at times when she knew or should have known that it would be inconvenient for Father to test. . . . Nonetheless, the [trial] court does not have serious concerns that [F]ather is intoxicated during his periods of custody. Despite this, Father has not demonstrated a commitment to following the testing in a timely manner such that Mother and the court can be ensured of his sobriety." Trial Court Opinion, 5/27/22, at 14-15.

consciously and subconsciously affect the child's relationship with Father." *Id.* at 10. The court reasoned as follows.

> The long good-bye and arriving early at custody exchanges is just one example. While Mother would have the [c]ourt believe that she is seeing resistance of the child going to Father's house, in fact, it is likely just resistance to the exchange itself. . . . The maternal grandmother testified that, the longer the child is at a custody exchange, the more anxious she becomes. Mother testified that she has started going to the custody exchanges early. It raises the question of why Mother would knowingly take steps to increase the child's level of anxiety regarding custody exchanges when it is clear to her own mother that this is occurring.
>
> In contrast, the nanny testified that the child looks forward to seeing Father and that there are no issues when the child is transitioning from her house to Father. The GAL went to specifically look at that issue and noted no problems. Therefore, Mother should be examining how her own behavior is contributing to the issues the child is having. Similarly, Mother testified that she plays with the child "right up to the time" she has to leave to go to [the custody exchange.]" [W]hy is she engaging the child in play exactly at the time the child is to be leaving for a custody exchange? The answer is a lack of insight and judgment. Father[,] while not perfect, does not seem to be engaging in the types of [behaviors that] undermine Mother's relationship [with the child] to the degree that Mother is attempting to undermine Father's relationship. Nor is he attempting to "poison the well" with the others who work with the family. Mother's attempts were clearly noted in the GAL's report. . . .

*Id.* at 10-11.

The testimony of Mother, the maternal grandmother, and the nanny supports the court's findings. *See* N.T., 3/1/22, at 236; N.T., 4/4/22, at 74-76; N.T., 4/5/22, at 143, 150, 200; N.T., 5/11/22, at 14-15. In addition, the GAL expressed "concerns regarding" Section 5328(a)(8) and stated, "*See*

'*Note'* in Factor 2." Addendum to GAL Report at 7. With respect to (a)(2),

the present and past abuse committed by a party, the GAL stated:

> The GAL is unaware of any confirmed, substantiated (in either a criminal or a children and youth services capacity) abuse matter regarding [E.M.] since her involvement in the matter to the time of this report. **NOTE: Following the first two half-days of trial, it was brought to the attention of the GAL by at least two (2) professionals that Mother was raising past concerns regarding Father and that Mother requested or made statements that they were not to advise the GAL of Mother's alleged concerns regarding Father.**

*Id.* at 5 (emphasis added).[4]

Turning to Mother's first issue on appeal, she claims that the court

abused its discretion in its determinations regarding credibility and weight of

the evidence. However, it is within the discretion of the trial court to make

these determinations. *S.C.B.*, 218 A.3d at 913. "Indeed, the knowledge

gained by a trial court in observing witnesses in a custody proceeding cannot

adequately be imparted to an appellate court by a printed record." *Ketterer*

*v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006). Moreover, "it is not this

Court's function to determine whether the trial court reached the 'right'

decision; rather, we must consider whether, 'based on the evidence

---

[4] As stated above, the trial court found Section 5328(a)(2) and (2.1) inapplicable in this case. *See* Trial Court Opinion, 5/27/22, at 7. The court found that "referrals were made in August 2019, October 2019, and March 2021 to child protective services with regard to the child. The [c]ourt is not aware of any further referrals. Again, none resulted in any indicated or founded reports. In the context of high conflict custody litigation, the [c]ourt is more concerned about the parties using referrals as a weapon rather than any actual abuse of the child." *Id.*

- 14 -

presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party." **E.B. v. D.B.**, 209 A.3d 451, 469 (Pa. Super. 2019), *quoting* **King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005).

Specifically, Mother disagrees with the court's conclusion that it is not in E.M.'s best interest to arrive early for custody transfers to Father. As discussed above, the testimonial evidence amply supports the court's decision. Thus, we discern no abuse of discretion.

In addition, Mother disagrees with the court's decision to equally weigh between the parties Section 5328(a)(3), the parental duties performed by the parties. Although the court found that both parents can perform parental duties, it determined that "Mother's lack of judgment and insight extends to her parenting duties." Trial Court Opinion, 5/27/22, at 8. The court stated, for example,

> [F]our-year-olds do not get to decide whether to dye their hair pink in light of a clear direction from Father that he is not in agreement. That is clearly Mother's decision. She complained that Father tried to bleach the dye out of [E.M.'s] hair, but that would not have been a problem had Mother not dyed her hair to begin with. The [trial c]ourt does not condone Father's response but the problem was started by Mother[,] and it should have been foreseeable by her. Similarly, four-year-olds do not get to use unlimited makeup and perfume. It is [Mother's] job as a parent to reign in those excesses. . . .
>
> The most concerning part is the polarization of the child's eating habits. Mother's neighbor testified that essentially the child gorges herself on snack food before going to Father's house. Mother is undermining healthy eating at Father's house by sending snacks and junk food without his consent. Polarization on the

other side also involved Father. The testimony supported that, because Father believes that Mother is providing an excess of junk food, Father may be sending a polarizing message by being overly restrictive. . . .

The parents are also polarized over antibiotics. Father does not believe that they should be given as much as they are, and Mother apparently provided them to the child either without telling Father or without his consent. Given that Father is a physician, it would have been reasonable and required under the legal custody provisions for Mother to consult with Father on this issue.

*Id.* at 8-9. The testimony of Father, Mother, and Eichelberger, Mother's former neighbor, supports the court's findings. *See* N.T., 2/28/22, at 31-38; N.T., 3/1/22, at 234-239; N.T., 4/5/22, at 218. We again discern no abuse of discretion.

To the extent Mother argues that the testimony of Melhorn, the co-parenting counselor, contradicts the trial court's determination regarding her lack of judgment and insight impacting E.M., her claim fails.

Mother presented Melhorn's testimony during the reargument hearing, wherein Melhorn explained, "there are definitely things for both parents to be working on, but [Mother] is definitely much more motivated to participate [in co-parenting counseling]." N.T., 8/12/22, at 37. Melhorn explained, "I do suspect that [Father] has had some anxiety related to giving information, feeling as though there will be allegations [made against him by Mother]. He has verbalized that a lot, if he does participate or he is alone somewhere [with Mother] something is going to happen." *Id.* at 21-22. For example, she stated that Father has been resistant to attending E.M.'s extracurricular

activities when Mother is present. *Id.* at 22. Melhorn also explained that Father resisted providing Mother updated addresses of his family members in Michigan when he visited them with E.M. *Id.* at 24. However, Melhorn acknowledged that Father recently attended three of E.M.'s activities with Mother present, and, without providing specifics, she testified that the parties "actually even problem[-]solved a situation." *Id.* at 35. In addition, Father ultimately provided the updated addresses to Mother. *Id.* at 44-45. Further, Melhorn testified that, as part of her co-parenting counseling, she needs the parties to execute releases so that she can speak with their individual counselors. *Id.* at 32. Because Father had not provided the release, the court directed him on the record during the reargument hearing, as follows.

> [L]et me be clear, [Father] is going to get a counselor that will work with you. . . . [H]e has been under that [c]ourt [o]rder and in violation of the [c]ourt [o]rder for a substantial amount of time. There will be a counselor so that if Ms. Melhorn has some issues she can call and the counselor can address it with you in an individual session. End of discussion. . . .
>
> You have seven days, sir, to get a counselor she can work with. . . .

N.T., 8/12/22, at 33. At the conclusion of the reargument hearing, the court placed the following order on the record:

> The parties have agreed that . . . the co-parenting counseling will continue with Ms. Melhorn on Monday evenings from 7:15 to 8:15 [p.m.] by use of electronic communication. . . . [A]t this point[, it] will occur biweekly.
>
> [Father] will have seven days to provide a workable release for an individual counselor on an ongoing basis to Ms. Melhorn.

- 17 -

> We are going to look forward, rather than back. Seven days, ongoing counselor, workable release.

*Id.* at 63.

We discern no abuse of discretion by the court in fashioning the subject custody order based on Melhorn's testimony. The trial court considered the co-parenting counselor's testimony with respect to Father's "lack of commitment to counseling" and weighed it against the other evidence in this case. In addition, the court considered Melhorn's testimony in light of the foregoing order regarding Father's participation in both co-parenting and individual counseling. *See id.* We deem the custody order reasonable based on the court's sustainable findings of fact. Thus, Mother's first issue fails.

In her second claim, Mother contends that the trial court abused its discretion in granting the parties equally shared physical custody during the summer only and not during the school year. She relies upon our decision in *R.S. v. T.T.*, 113 A.3d 1254 (Pa. Super. 2015), wherein this Court vacated the order awarding the mother primary physical custody during the school year and shared physical custody during the summer. This Court concluded:

> [T]here is no discussion by the trial court about the possibility of harm to [c]hild in uprooting him from the care pattern he has known from a young age. We agree with [the f]ather that the trial court's decision is rendered more problematic by the conclusion that [the m]other is less likely than [the f]ather to encourage [c]hild's relationship with the other parent. The court's decision dramatically reduces [the f]ather's custodial time with [c]hild during most of the year, and may result in considerable damage to [c]hild's relationship with [the f]ather, despite the court's conclusion that [the f]ather is a capable parent.

*Id.* at 1261. *R.S.* is distinguishable from this case insofar as the trial court here weighed Section 5328(a)(8), the attempts of a parent to turn child against the other parent, in Father's favor and found it determinative. Further, in contrast to *R.S.*, the court maintained "the care pattern" E.M. has known since the existing custody order. Thus, Mother second issue fails.

In her third issue, Mother contends that the trial court improperly fashioned the subject order on Father's "extended family's residence in Michigan" at the expense of E.M. "losing the attachment she has developed with her two siblings and maternal extended family." Mother's Brief at 46-47. Mother fails to refer to any place in the record that supports her argument, and she fails to cite relevant legal authority. Therefore, we conclude that Mother has waived her third issue. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-466 (Pa. Super. 2017) (citation omitted) (reiterating that a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review); *see also* Pa.R.A.P. 2119(a). Even if not waived, we would conclude that this issue would also fail substantively. Indeed, the record does not support Mother's claims that (1) the trial court fashioned the custody order based on Father's extended relatives living in Michigan; and (2) her partial physical custody award during the school year and equally shared physical custody during the summer will make E.M. lose

any level of relationship with the maternal side of her family, including, but not limited to, E.M.'s half-brothers.

In her fourth issue, Mother argues that the court abused its discretion based on Father's past history of alcohol abuse and on one positive Soberlink test result. *See* Mother's Brief at 47-50. The trial court recognized that Father had one positive test result on June 30, 2021, through the Soberlink application. *See* Trial Court Opinion, 5/27/22, at 15; *see also* N.T., 2/28/22, at 60-63. Father denied that he had used alcohol at that time, and the court did not credit his testimony. *See id.*; *see also* N.T., 2/28/22, at 62-63. Nevertheless, the court concluded that it did "not have serious concerns that [F]ather is intoxicated during his periods of custody." *Id.* We discern no abuse of discretion in the court's holding.

Specifically, the record fails to demonstrate Father's intoxication with or without E.M. in his custody. Weston, E.M.'s nanny since she was three weeks old,[5] testified as follows on direct examination:

Q. Are you concerned that [Father] may be drinking while he's exercising custody of E.M.?

A. I have never seen any evidence of it. I don't live with them, but I have never seen any evidence of it.

Q. Has he ever dropped her off and you've noticed the smell of alcohol or he appearing to be intoxicated?

A. Never. I would not allow her to go with him if he did.

---

[5] Weston testified that E.M. is in her care every Monday through Thursday. N.T., 4/5/22, at 140.

Q. Now, you said you have spent some time with [Father]. He's come to some family events with you. Since October of 2020, have you seen him consume any alcohol?

A. There was one time where he came over for — and I don't remember the reason, if it was a party or a holiday, but E.M. was not with him. He did come over and he had a beer with my fiancé and my brother[,] I believe. But, yes, he did have a beer, but E.M. was not there.

Q. Has there been any other times where you have witnessed him consuming alcohol?

A. No.

N.T., 4/5/22, at 150-151. In addition, the GAL stated that she has "seen no direct evidence" of Father abusing alcohol during her time on the case, *i.e.*, since the April 19, 2021 court order. *See* Addendum to GAL Report at 9. Based on the record evidence, and giving due deference to the trial court's credibility findings in favor of Weston, we discern no abuse of discretion by the court on the weight it placed on Father's alcohol use. *See S.C.B.*, 218 A.3d at 913.

In her fifth issue, Mother contends that the trial court issued the existing custody order because of her work location in Rockville, Maryland for the U.S. Department of Health and Human Services. *See* Mother's Brief at 50. She asserts that she has since left that employment "to appease the trial court and resume the shared custody schedule of E.M." *Id.* at 50-51. Mother argues that the court abused its discretion in granting Father primary physical custody during the school year because she "is capable and available to parent and

based on her schedule and can accommodate E.M.['s] needs with a minimum of shared custody."[6]  *Id.* at 51-52.  We discern no abuse of discretion. Specifically, Mother refers to nothing in the record establishing that the trial court issued the existing custody order based on her work schedule. Moreover, the subject order was not based on the parties' work schedules. Rather, as discussed above, the court found Section 5328(a)(8) to be determinative.  Mother's fifth issue fails.

In her sixth and seventh issues, Mother asserts that the trial court demonstrated bias against her and erred in ordering that the GAL be present for any forensic interview of E.M. conducted because of any child abuse allegations.  *See* Mother's Brief at 26-31 (citing trial court's order set forth on the record and in open court during a judicial conference on April 28, 2021, which included the parties' counsel, the GAL, and local agencies investigating potential child abuse claims that may arise).  Specifically, Mother asserts that, on unspecified dates after the April 28, 2021 order, "there were at least two additional mandated reports filed" against Father with the child and welfare

---

[6] Mother stipulated that, since February of 2021, she has been a subcontractor for the Pennsylvania Department of Health; that her work "is entirely remote, and her normal working hours are Monday through Thursday 8:45 a.m. until 5:30 or 6:00 p.m. and Fridays 9:45 a.m. until 11:30 a.m."  Joint Stipulation at ¶ 12.  In addition, Mother stipulated that, since March of 2021, she has been employed part time as an unspecified mental health professional and her hours "fluctuate but typically are alternating Saturdays and Sundays from 9:00 a.m. to 5:00 p.m. and longer/additional shifts if offered and available, including some weeknights."  *Id.* at ¶ 14.

agency in Cumberland County, but the investigations were not completed due to the above-described order. **See** Mother's Brief at 31.

However, Mother fails to refer to any place in the record that supports her argument and/or that demonstrates her issues were raised in the trial court and, therefore, preserved for our review. **See** Pa.R.A.P. 2119(c)-(e). As such, we conclude that Mother has waived her sixth and seventh issues. **See In re M.Z.T.M.W.**, 163 A.3d at 465-466 (citation omitted); **see also State Farm Mutual v. Dill**, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*) (emphasis added) (citation omitted) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated."). Even if not waived, we would conclude that these issues fail on the merits inasmuch as Mother has not substantiated them. Indeed, our close inspection of the certified record has uncovered no evidence pertaining to "two additional mandated reports filed in Cumberland County [Children and Youth Services] against Father." Mother's Brief at 31; **see also Hrinkevich v. Hrinkevich**, 676 A.2d 237, 240 (Pa. Super. 1996) ("For purposes of appellate review, what is not of record does not exist."). We will not speculate on matters absent from the record.

In her eighth issue, Mother contends that the trial court "used status conferences to extend" the custody litigation over eleven months rather than schedule it for trial. Mother's Brief at 31. Mother cites to the relevant

Pennsylvania Rule of Civil Procedure, but she fails to set forth how the court violated it.[7]  The court explained that most of this case occurred during the COVID-19 pandemic, during which it made efforts to establish appropriate counseling for E.M. and the parties, and that unavoidable delays occurred. *See* Trial Court Opinion, 11/23/22, at 9-10.  Upon careful review, we conclude that Mother again fails to support her claim, and we further discern no abuse of discretion after careful review of the record.

In her ninth and final issue, Mother argues that the court demonstrated bias against her when it ordered E.M. to attend kindergarten for the 2022-2023 school year in Father's school district.  Specifically, Mother asserts that the court "denied E.M. access to public education in the school district that her brothers have attended since 2012 and that the child has a deep connection with teachers and students."  Mother's Brief at 33.  Mother has waived her final claim because she failed to include it in her concise statement of errors complained of on appeal.  *See In re M.Z.T.M.W.*, 163 A.3d at 466

---

[7] Rule 1930.7 provides:

> At any time in the proceedings, the court, the court's designee or the hearing officer, *sua sponte* or upon application of any party, may hold a status conference, in person or by any other means permitted by these rules, with the parties' counsel, the parties and counsel, or self-represented parties in order to review the case status and expedite the litigation.

Pa.R.C.P. 1930.7.

("[I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived. . . . With respect to issues not included in a concise statement, our Supreme Court has instructed that this Court has no discretion in choosing whether to find waiver. Waiver is mandatory, and this Court may not craft *ad hoc* exceptions or engage in selective enforcement. ***City of Philadelphia v. Lerner***, 151 A.3d 1020, 1024 (Pa. 2016)") (some citations omitted). Even if not waived, we would conclude that the claim would fail because there is no evidence on this record with respect to any relationship that E.M. has with teachers and students in Mother's school district. Mother's ninth issue fails. Because the evidence of record amply supports the custody order, and we discern no abuse of discretion, we affirm the order.

Order affirmed.[8]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2023

---

[8] In his brief, Father renewed his motion to quash Mother's appeal based upon her failure to comply with our appellate rule. ***See*** Father's Brief at 18-19. We decline Father's invitation, as Mother's noncompliance did not pose an insurmountable impediment to our review.