J-S21003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LESLIE A. HUMPHREY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN DUSTIN ROSS | : | No. 174 MDA 2023 |

Appeal from the Order Entered December 30, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2022-FC-000732-03

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: AUGUST 24, 2023**

Leslie A. Humphrey ("Mother") appeals from the December 30, 2022 custody order that awarded her primary physical custody of P.A.R., the daughter born to her and John Dustin Ross ("Father") in June 2020.  We affirm.

Mother and Father never married but lived together until Father left the family residence in February 2022.  Father currently lives fewer than ten minutes from Mother's home in York County, Pennsylvania.  The relationship remained tumultuous after the separation and on April 29, 2022, Father agreed to the entry of a final PFA order, as to Mother only, without admission of guilt.  Pursuant to the PFA, the parties' communications were restricted to

_____

[*] Retired Senior Judge assigned to the Superior Court.

custody-related messages on Our Family Wizard, an electronic co-parenting tool. The PFA order expired on April 29, 2023.

On May 22, 2022, Mother filed a custody complaint that focused on Father's alleged problems with anger management and marijuana consumption. The trial court entered an interim custody order awarding Mother primary physical custody and granting Father partial physical custody on Tuesday and Thursday evenings and overnights on alternating weekends. *See* Order, 6/14/22 at 5. The parties shared legal custody. *Id*. at 4.

The trial court scheduled evidentiary hearings during two non-consecutive days in November and December 2022. Mother and Father both testified, presented supporting witnesses, and admitted exhibits. Kasey Shienvold, Psy.D., testified about the Psychological Risk Assessment that he performed on Father and submitted his report for the court's review. As to Father's substance abuse, Dr. Shienvold noted that Father acknowledged smoking marijuana nightly by prescription for chronic pain and explained that he also took Adderall by prescription for Attention Deficit Hyperactivity Disorder. N.T., 12/22/23, at 20, Mother's Exhibit 17 at 2. Ultimately, as to Father's mental health, Dr. Shienvold opined within a reasonable degree of psychological certainty that, "There is no significant evidence to suggest that [Father] is struggling with major mood, anxiety, or thought disorder . . . [and Father] is determined to be a mild to moderate risk of harm to [his daughter]." *Id*., Mother's Exhibit 17 at 4.

After the hearing, the trial court issued an order and an opinion stating its findings with respect to the factors set forth in 23 Pa.C.S. § 5328(a), discussed *infra*. **See** Trial Court Opinion, 12/29/22, at 5-19. In addition to fashioning a comprehensive custody schedule, the trial court prohibited Father from ingesting medical marijuana "during the [six] hours immediately preceding his operation of a motor vehicle with the child in it." Final Custody Order, 12/29/22, at 13. Mother filed a notice of appeal, along with a concurrent concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court entered a Pa.R.A.P. 1925(a) opinion addressing those arguments.

Mother presents three issues, which we reorder for ease of review.

I. Whether the lower court committed an abuse of discretion and/or an error of law when it determined that the history of past drug abuse was a neutral factor when that determination is not supported by the record?

II. Whether the lower court committed an error of law and/or abuse of discretion when it ordered that Father may consume marijuana and transport the child after a six-hour wait period when that conclusion is: unsupported by facts in evidence, is against the weight of the evidence, is contrary to the best interests of the child, and is impliedly consenting to criminal conduct?

III. Whether the lower court committed an abuse of discretion and/or an error of law when it failed to apply the "best interest of the child standard" in implementing a custody schedule which: Dramatically changes the existing schedule[;] affords almost 1/7th of the child's waking hours to a non-custodial party[;] results in less time with the child's sibling[;] does not serve the stated interest of the court[;] is not supported by the record[;] and is not consistent with statutory provisions?

Mother's brief at 4 (cleaned up) (unnecessary capitalization omitted).[1]

We review a custody order for an abuse of discretion. ***R.L. v. M.A.***, 209 A.3d 391, 395 (Pa.Super. 2019). We will not find an abuse of discretion merely because we would have reached a different conclusion than the trial court. ***Id***. Rather, we will find an abuse of discretion only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. ***Id***.

Our scope of review is broad. ***Id***. Since this Court does not make independent factual determinations, we must accept findings of the trial court that are supported by competent evidence of record. ***S.C.B. v. J.S.B.***, 218 A.3d 905, 913 (Pa.Super. 2019). Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. ***Id***. However, we are not bound by the trial court's deductions or inferences. ***Id***.

In a child custody case, "the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa.Super. 2014). Once a custody arrangement is established by order, a court may modify it at any time upon a party's petition if the modification serves the best interests of the child. ***See*** 23 Pa.C.S. § 5338. To that end, the Child Custody Act sets forth sixteen

---

[1] Father did not file a brief.

factors that a court must consider before making any custody determination, including a modification of a custody order. ***See E.B. v. D.B.***, 209 A.3d 451, 460 (Pa.Super. 2019). Therefore, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." ***Id***. (citation omitted). The statutorily required factors are as follows:

> (a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.
> >
> > (4) The need for stability and continuity in the child's education, family life and community life.
> >
> > (5) The availability of extended family.
> >
> > (6) The child's sibling relationships.
> >
> > (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Instantly, the trial court carefully considered the foregoing custody factors and explained its rationale for granting Mother primary physical custody. The court determined that factors two, four, six, eight, and ten favored Mother, no factors militated in favor of Father, and the remaining factors were either neutral or inapplicable. Significantly, as to factors thirteen

and fourteen, relating to the level of conflict between the parties, and the parties' history of drug or alcohol abuse, respectively, the court concluded that the factors were neutral because of the parties' improved co-parenting efforts, Father's progress in counseling, and Father "legitimate prescriptions for medical marijuana and Adderall." Trial Court Opinion, 12/29/22, at 18.

The court summarized its best interest analysis as follows:

Of the 16 factors considered by the court, eleven of them were neutral or did not really apply. That tends to suggest a relatively even matching of the parties, but admittedly, the remaining five factors were not even. On the other hand, the five factors which favored [Mother] were not overwhelmingly favorable to her and provide less advantage to her than she apparently thinks.

Of the five factors which favored [Mother], one factor favored her only slightly (stability/continuity) and two others favored [Mother] but were given little or no weight (abuse and efforts to turn child against the other parent). Those limited weightings and the slight favoring on stability/continuity mitigated the impacts of three factors [weighing in Mother's favor], meaning that 14 were neutral or close enough to it that they didn't greatly move the needle overall. . . .

In addition, the court applied moderate weight to a neutral factor (parental duties) because it was a significant factor. While it favored neither [parent], it was important to the case and was not to be disregarded simply on account of being neutral. The moderate weighting assigned was intended to communicate that the factor suggested a neutral custody award was more appropriate rather than being a factor that was neutral because it was irrelevant. Giving this particular neutral factor a moderate weight was this court's way of stating that the factor more strongly suggested a shared custody outcome as opposed to one awarding one parent with a greater amount of time than the other. This should have been a signal to [Mother] that her apparent victory was less overwhelming than she seemingly believed it to be.

Pa.R.A.P. 1925(a) Opinion, 2/28/23, at 6-7.

Mother's first argument challenges the weight that the trial court applied to certain best-interest factors, namely factor fourteen relating to the parties' respective past substance abuse. Scoring the trial court's best-interest analysis as a five-nil contest in her favor, Mother asserts that the court erred in finding that factor fourteen was neutral. She reasons, "a [sixth] and possibly pivotal factor should have been decided in [her] favor." Mother's brief at 16. Essentially, Mother asserts that the court erred in equating Father's habitual consumption of marijuana and Adderall, which he currently acquires pursuant to a recently issued medical authorization and prescription, respectively, outweighs her present reliance on Adderall and evidence of her past marijuana consumption. *Id*. at 17. Assailing the trial court's role as the ultimate arbiter of fact, she contends "it is unsupported by the record for the lower court to find that [Father's] history of drug and alcohol abuse is not far more substantial than that of [Mother]." *Id*. at 18.

In rejecting Mother's assertion that the trial court discounted Father's history of substance abuse in finding this factor neutral, the trial court highlighted that Father engaged in substantial rehabilitation efforts "and manifested significant behavioral changes for the better." Rule 1925 Opinion, 2/28/23, at 4-5. Hence, notwithstanding Father's past substance abuse, his current reliance on prescribed medication is not a detriment to his daughter's best interests. As the trial court accurately observed, while Mother discounts

Father's efforts, the trial court "saw it differently" and this difference of opinion is not an abuse of discretion." *Id*. at 5. We agree.

Mother's arguments simply ask that we reweigh the evidence adduced during the hearing to reach conclusions in her favor. It is axiomatic that a party cannot dictate the weight that the trial court attributed to the evidence or its consideration of any single factor. Indeed, as we explained in *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013), "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." We simply will not revisit the trial court's factual findings that are based on the certified record to reassess the weight of the evidence. *J.R.M. v J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011) ("[W]ith regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand[.]"). Thus, inasmuch as the certified record sustains the trial court's findings of fact regarding the extent and significance of Father's rehabilitation, we do not disturb them. *See S.C.B. supra*, at 913. Having reviewed the certified record, we discern neither an abuse of discretion nor legal error in the trial court's best-interest analysis pursuant to § 5328(a).

Mother's second argument is an extension of her assessment of Father's marijuana use. She challenges the court's reliance upon the proviso prohibiting Father from operating an automobile with P.A.R. in it within six hours of ingesting marijuana as it is insufficient to render him unimpaired

pursuant to 75 Pa.C.S. § 3802(d)(1)(i), the DUI statute criminalizing the operation of a motor vehicle with any amount of marijuana in his blood, and therefore, she argues that it does not serve her daughter's best interest. Mother's brief at 18-19. Mother suggests that the trial court should have specifically precluded Father from driving in violation of the DUI statute, which she highlights would eliminate any possibility that he would drive his daughter while impaired. *Id*. at 19. Ultimately, she posits that the provision "expressly allows Father to drive a motor vehicle with the child inside, for purposes of the custody order, if he waits six hours after consuming medical marijuana to drive." *Id*. at 20.

We reject Mother's glib contention that the relevant provision authorized Father to drive while impaired. In actuality, the trial court order specifically directed that "[n]o person transporting the child shall consume alcoholic beverages or take an illegal substance prior to transporting the child or be under the influence of . . . any other substance that impairs the ability to drive while transporting the child." Pa.R.A.P. Opinion at 2/28/23, at 9-10. Thus, notwithstanding Mother's protestations to the contrary, the court specifically prohibited anyone, including Father, from operating a motor vehicle while impaired.

Mother's apprehension with the court's six-hour restriction is founded on the misconception that the court sanctioned otherwise improper conduct. It did not. The trial court opinion that accompanied the custody order

- 10 -

cautioned Father that "the mere presence of the psychoactive component of marijuana (THC)[2] or even only the inactive metabolites which do not cause impairment can be the basis for a DUI charge in Pennsylvania even if he is not impaired at all." Trial Court Opinion, 12/29/22, at 17-18. Thus, as the trial court colorfully concludes, the provision "is not the 'get out of a THC DUI free card' that [Mother] makes it out to be." Pa.R.A.P. Opinion at 2/28/23, at 12. In fact, the trial court fashioned the six-hour restriction in addition to the general prohibition of impaired driving to assuage Mother's concerns about Father's behavior. The court explained,

> The intention was to provide a workable rule in the custody order to give [Mother] a realistic means of recourse for civil contempt if she suspected [Father] of DUI[-]type conduct under Pennsylvania law as it relates to THC. She has no duty with this bright line rule to produce toxicological evidence or prove actual impairment and she has access to contempt remedies.
>
> The DUI statute contained in the [Pennsylvania Motor] Vehicle Code and all related chemical testing statutes provide no relief to a litigant in custody court like [Mother] who does not have the backing of state authority to compel blood testing or secure a warrant to compel chemical testing. In the event [Mother] becomes concerned [Father] is using THC, say from a social media post, and then he shows up at a custody exchange driving himself in a vehicle, she likely could do very little absent this language, other than to call 911 and hope for the best. With this language in place, she can choose to litigate the issue even if the police decline to investigate or prosecute because of concerns about lack of probable cause to require a blood draw or an inability to secure a conviction [.] . . . [Mother] fails to appreciate that this rule was written by the court to give her an enforcement tool to prevent a

---

[2] THC, or Tetrahydrocannabinol, or is the primary psychoactive component in marijuana.

possible harm she complained of at trial, which was [Father] driving with THC in his system.

*Id*. at 12.

Phrased differently, the restriction provides that, if Father operates a vehicle within six hours of ingesting medical marijuana, he is in violation of the custody order and is subject to sanction **regardless** of actual impairment. This tool that the court provided for Mother's use is hardly the *imprimatur* for criminal conduct that she suggests. Accordingly, we discern no abuse of discretion in the trial court supplementing the DUI statute by fashioning a clear and objective prohibition on Father's operation of a motor vehicle with his daughter within six hours of ingesting medical marijuana.

Finally, we address Mother's challenge to the schedule of physical custody because it increased Father's periods of overnight custody from the two overnights that he exercised in the interim custody order. This issue has two components: (1) the increased periods of partial physical custody will not benefit P.A.R. because of Father's work schedule; and (2) Father's paramour, Amanda Bryant, whom Mother equates to someone with third-party standing, will "exercise" periods of physical custody "1/7th of the child's waking time." Mother's brief at 11-12. Mother characterizes the parallel cruxes of these two contentions as follows: "The lower court's final order then can best be characterized as a focus on increasing the amount of [Father's] overnights at the expense of meaningful time the child spends with the child's parents[; and

t]he child's interests cannot be served by prioritizing time with a third-party over that of one of the parents." *Id*. at 12-13. Again, no relief is due.

As to Mother's protestations the court reasoned,

> [Mother] quibbles about the court changing visits for a few hours on some nights into overnights, but again, it is nothing that rises to the level of abuse of discretion. The elimination of the back-and-forth that comes with a several hour custody visit was an attempt by the court to limit transitions and to make the schedule simpler, which the court perceived to be in the best interest of the child. Again, disagreement is not abuse of discretion.
>
> [Mother] also complained that additional time awarded to [Father] would be in the presence of [Father's] paramour, not [Father], and maintained that this was an error. The record contains testimony from [Father] that indicates his willingness to alter his schedule and his way of operating his business. In addition, his business is seasonal, so his unavailability due to work even with no changes would not apply in at least some months. The court found the testimony of [Father] on his availability to care for the child to be credible.

Rule 1925 Opinion, 2/28/23, at 5-6 (footnotes omitted)

First, Mother's reference to the interim order as a guidepost for her daughter's best interests is unavailing because the interim order was based on the relevant facts pled when Mother initiated the case and without the benefit of a two-day evidentiary hearing. Hence, as the trial court highlighted in the Rule 1925 opinion, "[Mother] has no legal entitlement to the conditions of the interim order as a locked in starting point or handicap for her benefit at trial." *Id*. at 8.

Similarly, we also reject Mother's characterization of Ms. Bryant, Father's paramour, as a non-parent, third-party whose custodial rights are

subservient to Mother's pursuant to § 5327(b) of the Child Custody Act. That provision provides, in pertinent part, "In any action regarding the custody of the child between a parent of the child and a nonparent, these shall be a presumption that custody shall be awarded to the parent." 23 Pa.C.S. § 5327(b). Mother first reasons that since Ms. Bryant is Father's primary childcare provider when Father is at work, she will be exercising custody during the majority of Father's custodial periods. Next, she invokes **R.P. v. K.F.**, 2020 WL 974414, at *10 (Pa.Super. 2020), a citable non-precedential decision pursuant to Pa.R.A.P. 126(b), for the proposition that the trial court erred by not fashioning a custody schedule that allowed Mother to provide her daughter childcare when father was at work. Mother's brief at 13.

Mother's reliance upon **R.P.** is questionable because the **R.P.** Court held that the trial court **did not** abuse its discretion in refusing to give a mother a right of first refusal, over the paternal grandmother, when Father needed to use a baby siter. We explained that it served the child's best interest for the trial court to permit the father, in his discretion, to utilize third parties, to care for his son while exercising his custodial time. **Id**. at *9. Indeed, finding "no merit [in the m]other's argument that the trial court awarded Grandmother any form of custody," this Court upheld the trial court's endorsement of the father's freedom to choose a childcare option that is convenient for him. **Id**. at *10.

Disregarding our deference for the best-interest determinations of trial courts, rejection of the mothers' argument equating the caregiver with a non-parent third-party, and our support for the father's autonomous child-care decisions, Mother argues that because Ms. Bryant does not share a long-standing bond with P.A.R., which was apparent in **R.P.**, we should find that the trial court abused its discretion in not requiring Father to utilize her exclusively in this case. We disagree. In addition to the fact that Mother's argument contrasts with all but one aspect of this Court's reasoning in **R.P.**, the trial court highlighted Father's flexibility and willingness to adapt his work schedule, and more importantly, the fact that Father's employment is seasonal "so his unavailability due to work . . . would not apply in at least some months." Rule 1925 Opinion, 2/28/23, at 6. Considering the foregoing in light of our deferential standard of review, we do not discern that the trial court abused its discretion in declining to craft a custody schedule that provides Mother custodial periods when father is working. **See Ketterer v. Seifert**, 902 A.2d 533, 539 (Pa.Super. 2006) ("Ultimately, the test is "whether the trial court's conclusions are unreasonable as shown by the evidence of record.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/24/2023