J-S21013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALESANDRO MARANGON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JERRY BETTS, JR.; ANGELICA | : | |
| NIEVES-MERCED; AND ODYSSEY | : | |
| ESTATES, LLC | : | |
| | : | |
| Appellants | : | No. 304 EDA 2025 |

Appeal from the Order Entered December 18, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2024-16901

BEFORE:   KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                     **FILED JULY 28, 2025**

In this contract dispute, Jerry Betts, Jr.; Angelica Nieves-Merced; and Odyssey Estates, LLC appeal from the order denying their petition to strike a default judgment that Plaintiff, Alesandro Marangon, took prematurely.  He took default judgment more than 30 days after he e-mailed the complaint to Odyssey Estates, rather than 30 days after the Sheriff of Montgomery County served the complaint.  Mr. Marangon took a snap, default judgment – *i.e.*, one entered before the Defendants defaulted.  Because snap, default judgments are void *ab initio*,[1] we reverse and remand.

On January 15, 2024, Mr. Marangon, a resident of New Jersey, entered into a co-hosting contract for short-term-rental properties with Mr. Betts, Ms.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Latin, literally translating to "from the beginning."

Nieves-Merced, and Odyssey Estates (collectively, "the Co-Hosts"). The Co-Hosts were in the hospitality and property-management business.

Mr. Betts, a Pennsylvania resident, was principal officer and sole owner of Odyssey Estates, a Pennsylvania company. *See* Complaint at 6, ¶ 2-3. Ms. Nieves-Merced was also a Pennsylvania resident. *See id.* at 6, ¶ 4. The Co-Hosts all resided at or primarily did business at 963 E. Main St. in Norristown, Pennsylvania. *See id.* The complaint did not allege that Ms. Nieves-Merced had an alternative address in New Jersey.

On July 8, 2024, proceeding *pro se*, Mr. Marangon initiated this lawsuit by filing a complaint against the Co-Hosts. On that same date, Mr. Marangon also filed a paper titled "Affidavit of Service Pursuant to Pa.R.C.P. 1930.4." The Affidavit did not certify that Mr. Marangon perfected service on anyone. He merely stated, "a copy of this Complaint filed on July 6, 2024, was sent to Defendants at 963 E. Main St. Norristown, PA 1940 via certified mail on July 6, 2024. Moreover, a Sherriff service was requested on July 6, 2024."[2] Affidavit of Service, 7/8/24, at 1.

Five days later, on July 13, 2024, Mr. Marangon mailed and e-mailed copies of the complaint to the Co-Hosts. *See* Affidavit of Service, 8/19/24, Ex. A (United States Postal Service Priority Mailing Receipt) at 6 and Ex. B (July 13, 2024 E-mail from Marangon to Odyssey Estates) at 1. After another 22 days, on August 4, 2024, Mr. Marangon e-mailed a notice of his intention

---

[2] How Mr. Marangon could have requested the sheriff to serve the complaint two days **before** he filed it with the prothonotary is not clear on this record.

to take default judgment against the Co-Hosts in ten days' time. ***See id.***, Ex. B (August 4, 2024 E-mail from Marangon to Co-Hosts) at 2.

Then, on August 7, 2024, the Sheriff of Montgomery County served the complaint at Mr. Betts' home. A deputy hand delivered it to Mr. Betts' sister, Samantha Ayala.

The Co-Hosts hired Steven C. Levenson, Esq., a lawyer in New York City, to defend them in Pennsylvania. ***See*** Petition to Open/Strike the Default Judgment at 1. However, Attorney Levenson was "unfamiliar with the e-filing system of [Montgomery] County." ***Id.*** He claimed that, due to his unfamiliarity with the local rules, when he mailed the Co-Hosts' answer and counterclaims on August 14, 2024, Attorney Levenson sent it "without the original wet signatures, only an electronic attorney signature and a copy of the verification." ***Id.*** at 2. Strangely, nothing of record indicates that Attorney Levenson's mailing ever reached the Prothonotary of Montgomery County or that the prothonotary refused to file the answer.

On August 17, 2024, Mr. Marangon praeciped for default judgment against the Co-Hosts.

Four days later, Attorney Levenson, who never entered his appearance on the record, petitioned to open or strike the default judgment on behalf of the Co-Hosts. In the petition, the Co-Hosts alleged the above omissions by Attorney Levenson. They also asserted that Mr. Marangon improperly served the complaint. Further, the Co-Hosts claimed they "did not properly receive

the ten days' notice of default until the sheriff's office delivered said document on August 8, 2024." *Id.*

An answer accompanied the petition. It contained a certification by Attorney Levenson, dated August 6, 2024. The petition also included two verifications that Mr. Betts and Ms. Nieves-Merced signed and dated August 7, 2024. *See* Petition to Open/Strike the Default Judgment at 5-6.

On October 29, 2024, Walter Bernard, Esq. entered his appearance on behalf of the Co-Hosts. Thereafter, the trial court denied the petition to open or to strike the default judgment. The Co-Hosts filed a timely, uncounseled notice of appeal.[3]

The Co-Hosts raise three appellate issues. They are as follows:

_____

[3] When the Co-Hosts appealed, Attorney Bernard was their counsel of record, and he continues to represent them in this Court. However, after this Court docketed the appeal, Mr. Marangon filed an application for quashal, based on his belief that the rule against hybrid representation rendered the Co-Hosts' uncounseled notice of appeal a legal nullity. He is incorrect.

"As a general matter, our courts prohibit *pro se* filings by represented appellants, and we treat those filings as legal nullities." *S.C.B. v. J.S.B.*, 218 A.3d 905, 911 n.4 (Pa. Super. 2019). Still, hybrid-representation notices of appeal are an exception to that rule. *See id.* "Because a notice of appeal protects a constitutional right, it is distinguishable from other filings . . . We thus hold that this Court is required to docket a *pro se* notice of appeal despite Appellant being represented by counsel . . . ." *Commonwealth v. Williams*, 151 A.3d 621, 624 (Pa. Super. 2016). Under *Williams*, the Co-Hosts' hybrid-representation, uncounseled notice of appeal is permissible, and it properly vested our appellate jurisdiction. Hence, this Court issued an order denying Mr. Marangon's application to quash and submitted the Co-Hosts' appeal to this panel for a disposition on the merits. *See* Superior Court Order, 2/8/25, at 1.

1. Whether the default judgment is deemed void *ab initio* when the prothonotary did not have authority to enter a default judgment against [the Co-Hosts,] because [they] were never given 20 days to file a response, evidencing a fatal defect on the record?

2. Whether the trial court erred when it held that service of process was proper against each of defendants pursuant to Montgomery County Local Rule 400.1 (b)(1)?

3. Whether the trial court erred when it denied [the Co-Hosts'] petition to open, when the petition was: a) filed within ten days, b) a meritorious defense was raised, and c) the failure can be excused?

Co-Hosts' Brief at 7. We address only the first appellate issue, because it is dispositive.

The Co-Hosts contend that the prothonotary lacked authority to enter default judgment against them, because they were never in default of their obligation to plead to Mr. Marangon's complaint. They argue that the sheriff served Mr. Betts (and only Mr. Betts) on August 7, 2024. Thus, the Co-Hosts argue that he had 20 days from that date to plead. Hence, in their view, Mr. Marangon prematurely filed his petition for default judgment on August 17, 2024. Moreover, the Co-Hosts think Mr. Marangon never properly served the complaint on Ms. Nieves-Merced and Odyssey Estates. Therefore, they claim that their 20-day clock to plead had not even started to run by the time Mr. Marangon took the default judgment against them.

For his part, Mr. Marangon believes he originally served the complaint via his July 13, 2024 e-mail, which he addressed solely to Odyssey Estates. *See* Marangon's Brief at 6. In his view, the e-mail constitutes original service

- 5 -

of process and began the running of the 20-day clock for all the Co-Hosts to plead. He cites no Rule of Civil Procedure or any case law to support his proposition that an e-mail is sufficient as initial service of process in this Commonwealth. Mr. Marangon also claims that, because the Co-Hosts dated their verification attached to their motion to strike the default judgment for August 7, 2024, they had access to the complaint at least ten days prior to when he took default judgment on August 17, 2024.

Based on this fact, Mr. Marangon asserts that the Co-Hosts had actual knowledge of the filed complaint by August 7, 2024. He cites no case law for his contention that actual knowledge of a filed complaint is a legal substitute for service of original process. Additionally, he suggests that he properly served Ms. Nieves-Merced in New Jersey "via USPS Priority Mail with signature confirmation on August 5, 2024." *Id.* at 7. Mr. Marangon also argues that he properly served Odyssey Estates on August 7, 2024, when the sheriff served the complaint on Ms. Ayala. Mr. Marangon contends, because Mr. Betts "is the owner and principal of Odyssey Estates," serving the complaint on Mr. Betts' sister at his home (which was also Odyssey Estates' principal place of business) constituted service upon Odyssey Estates, as well. *Id.* at 8.

Finally, Mr. Marangon states that even if "the July 13, 2024, electronic service via e-mail or the [United States Post Office was] . . . procedurally defective, any such defect was cured by subsequent proper service via ten-day notice on August 3, 2024 and the sheriff's service on August 7, 2024." *Id.* He claims that, because the Co-Hosts signed their verification to their

answer attached to the petition to strike the default judgment on August 7, 2024, they suffered no prejudice from him taking default judgment on August 17, 2024. *See id.*

Initially, we ask whether the Co-Hosts' claim of error is properly before us for appellate review, because they did not raise it in their petition to open or to strike the default judgment. Nor did they raise it in either of their Rule 1925(b) Statements of Errors Complained of on Appeal. However, the Co-Hosts assert that the issue of whether a judgment must be stricken as void *ab initio* is nonwaivable. *See* Co-Hosts' Brief at 18-19.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Trigg v. Children's Hospital of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020).

"As a *general* matter . . . issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal." *Id.* (citing Pa.R.A.P. 302(a)) (emphasis added). "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." *Id.*

"However, we have long held that a litigant may seek to strike a void judgment at any time." *Oswald v. WB Public Square Associates, LLC*, 80 A.3d 790, 793 n.2 (Pa. Super. 2013). We extended this rule to facially defective default judgments in *Mother's Restaurant, Inc. v. Krystkiewicz*, 861 A.2d 327, 337 (Pa. Super. 2004) (*en banc*) (holding that the question of

whether a default judgment is void *ab initio* may be raised "at any time and cannot [be] waive[d]."). There, the restaurant filed an amended complaint, but it forgot to attach a notice to plead. The defendant did not plead, and the restaurant took a default judgment. The defendant then petitioned to open the default judgment, but he did not petition to strike it. Nor did he argue to the trial court that the default judgment was void *ab initio* due to the restaurant's failure to attach a notice to plead to its amended complaint.

Sitting *en banc*, we explained that a void judgment (as opposed to a voidable judgment) is always subject to judicial correction, regardless of how much time passes from its entry on the docket. "The courts of this Commonwealth have long held that an individual may seek to strike a void judgment at any time." *Id.* "Additionally, an individual may even seek to strike a void judgment after a trial court has previously denied his/her petition to open the same judgment." *Id.* Indeed, a void judgment lacks preclusive effect, because "a void judgment is no judgment at all." *M & P Management, L.P. v. Williams*, 937 A.2d 398, 401 (Pa. 2007) (quoting *Clarion, M. & P. R. Co. v. Hamilton,* 17 A. 752 (Pa. 1889)).

Thus, **Mother's Restaurant** held that the issue of whether a judgment must be stricken as void *ab initio* may be raised for the first time on appeal, notwithstanding Rule 302(a). Accordingly, we address the merits of the Co-Hosts' first appellate issue.

If "a party seeks relief from a default judgment, they may file a petition to strike and/or a petition to open." *Fox v. Andrews*, 304 A.3d 779 (Pa.

Super. 2023). Most defendants file them in the same document, as the Co-Hosts have done here. Nevertheless, they are very distinct petitions with separate burdens of proof and standards of review. *See id.*

"A petition to strike a judgment is a common-law proceeding which operates as a demurrer to the record." ***Cintas Corp. v. Lee's Cleaning Services, Inc.***, 700 A.2d 915, 917 (Pa. 1997).[4] "A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record." ***Id.*** "A demurrer admits all well-pleaded facts for the purpose of testing conclusions of law drawn from those facts." ***Id.*** at 918.

"Importantly, a petition to strike is not a chance to review the merits of the allegations of a complaint." ***Oswald***, 80 A.3d at 794. "Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the [appellants], as a matter of law, to relief." ***Id.*** As a demurrer raises a question of law, "our standard of review is *de novo* . . . ." ***Id.*** at 793. However, our scope of review includes "only . . . the facts of record at the time the judgment was entered to decide if the record supports the judgment." ***Cintas Corp.***, 700 A.2d at 919.

Pennsylvania Rule of Civil Procedure 1037 authorizes the prothonotary to enter a default judgment if a defendant fails to file a timely pleading in response to a complaint. "The prothonotary, on praecipe of the plaintiff, shall

---

[4] By contrast, a petition to open a judgment is an equitable action, historically addressed to the conscience and discretion of the chancellor. ***See Cintas Corp. v. Lee's Cleaning Services, Inc.***, 700 A.2d 915, 917 (Pa. 1997).

enter judgment against the defendant for failure to file within the required time a pleading to a complaint which contains a notice to defend . . . ." Pa.R.C.P. 1037(b).

Here, all parties agree that the complaint contained a notice to defend. Still, the Co-Hosts claim the default judgment is void *ab initio*, because the record reveals that they were not in default when Mr. Marangon praeciped for default judgment. The Co-Hosts assert that they committed no "failure to file **within the required time** a pleading to a complaint," because the time period had not expired by August 17, 2024, *i.e.*, the day that Mr. Marangon praeciped for his default judgment. ***Id.*** (emphasis added).

To resolve this issue, we must determine if and when the time for the Co-Hosts to plead commenced. If the time frame for them to plead began to run, we must then determine whether the Co-Hosts' time frame in which to file a pleading expired before Mr. Marangon took default judgment. If the time frame did not expire before August 17, 2024 as to a particular Co-Host, then the Co-Host was not in default when Mr. Marangon took default judgment. If a Co-Host was not in default when Mr. Marangon took default judgment, then the prothonotary lacked authority under Rule 1037(b) to enter default judgment against that Co-Host, and the default judgment against such a Co-Host was void *ab initio*.

Under Rule 1026, "every pleading subsequent to the complaint shall be filed **within twenty days after service** of the preceding pleading . . . ." Pa.R.C.P. 1026 (emphasis added).

Additionally, the prothonotary shall only enter a default judgment if:

> the *praecipe* for entry [of default judgment] includes a certification that a written notice of intention to file the *praecipe* was mailed or delivered . . . after the failure to plead to a complaint and at least ten days prior to the date of the filing of the *praecipe* to the party against whom judgment is to be entered and to the party's attorney of record, if any.

Pa.R.C.P. 237.1(b)(2). Rule 237.1(b)(2) adds a minimum of ten more days after the defendant is in default before the prothonotary is authorized to enter a default judgment against the defendant.

The Supreme Court of Pennsylvania adopted Rule 237.1 "to avoid **snap judgments** by requiring notice of the intention to enter certain judgments . . . by default." Pa.R.C.P. 237.1, Explanatory Comment—1994 (emphasis added). "The intent of the rule is to afford a minimum of ten days . . . after failure to plead within which the failure may be cured." *Id.* "To assure this, the notice **may not** be given until the time for action has elapsed and the failure occurs." *Id.* (emphasis added).

"This will prevent a plaintiff at the time of service of the complaint . . . from including a notice that judgment will be entered on the twenty-first day after service." *Id.* "The notice cannot be given before [the 21st] day because, prior to that day, no default or failure exists." *Id.*

As the Comment to Rule 237.1 makes clear, Mr. Marangon needed to wait until the Co-Hosts were in default before mailing them the ten-day notice of his intention to take default judgment. If he did not wait an additional ten days to send his notice to the Co-Hosts, then his notice was invalid, and the

prothonotary would have lacked authority to enter the default judgment under Rule 237.1. The combined effect of Rules 1026 and 237.1 is that defendants have at least 31 days from the date that they are served the complaint to plead. Until at least 31 days have passed after service of the complaint, a plaintiff may *not* take default judgment against the defendants.

Here, Mr. Marangon commenced his action by filing a complaint. Hence, he had to comply with the rules governing original service of process when he sent the complaint to the Co-Hosts.

Generally, "original process shall be served within the Commonwealth only by the sheriff." Pa.R.C.P. 400(a). Mr. Betts is a resident of Pennsylvania, Ms. Nieves-Merced is a resident of Pennsylvania, and Odyssey Estates is a Pennsylvania company with its place of business at Mr. Betts' and Ms. Nieves-Merced's residence in Norristown, Pennsylvania. *See* Complaint at 6, ¶ 2-4. Under Rule 400(a), because all the Co-Hosts are residents or business entities of Pennsylvania, the only event of record that may have constituted service of original process was when the sheriff handed the complaint to Ms. Ayala at Mr. Betts' and Ms. Nieves-Merced's home on August 7, 2024.

Nothing in our Rules of Civil Procedure permits original service of process by e-mail. Thus, Mr. Marangon's reliance upon his July 13, 2024 e-mailing of the complaint to Odessey Estates is nonsensical. Furthermore, there is no allegation in the complaint that Ms. Nieves-Merced resides or maintains an alternative address in New Jersey where she may receive service of process. Thus, his claim that he received a return receipt from the Post

- 12 -

Office, proving that Ms. Nieves-Merced received the complaint in New Jersey is legally insufficient to establish original service of process as to her under the Rules.

In addition, Mr. Marangon claims that Ms. Nieves-Merced received a mailed copy of the complaint in New Jersey on August 5, 2024. Even if this constituted proper original service of process (and on the face of this record, it did not), Ms. Nieves-Merced would still have had until August 26, 2024 before she would have been in default.

Moreover, to whatever extent the sheriff's handing of the complaint to Ms. Ayala was original service of process at Mr. Betts' and Ms. Nieves-Merced's Norristown address, such service occurred on August 7, 2024. Assuming, without deciding, that such service was proper for all Co-Hosts, they had 21 days from August 7, 2024 until they would have been in default. Therefore, the Co-Hosts had until August 28, 2024 before they were in default.

Thus, we hold that the earliest possible date on which Mr. Marangon could have properly sent his ten-day notice of intention to take a default judgment was August 29, 2024, *i.e.*, one day after the day on which Co-Hosts would have defaulted. Ten days after August 29, 2024 was September 8, 2024, which was a Saturday. As a result, the earliest possible date that Mr. Marangon could have praeciped for default judgment was September 9, 2024.

Mr. Marangon took default judgment on August 17, 2024. Thus, on the face of the record, the default judgment was prematurely and improperly entered. Under the Pennsylvania Rules of Civil Procedure, "the prothonotary

had no authority to enter the default judgment" against any of the Co-Hosts. ***Mother's Restaurant***, 861 A.2d at 338.

Mr. Marangon's remaining arguments – namely, that we should ignore his failure to perfect service of original process upon the Co-Hosts prior to his taking a default judgment against them – are unpersuasive.

"Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed." ***Cintas Corp.***, 700 A.2d at 917. "Without valid service, a court lacks personal jurisdiction of a defendant and is powerless to enter judgment against him or her." ***Id.*** at 917–18. "Thus, improper service is not merely a procedural defect that can be ignored when a defendant subsequently learns of the action against him or her." ***Id.*** at 918.

Mr. Marangon contends that, even if "the July 13, 2024, electronic service via e-mail or the [United States Post Office was] . . . procedurally defective, any such defect was cured by subsequent proper service via ten-day notice on August 3, 2024 and the sheriff's service on August 7, 2024." Marangon's Brief at 8. This contention is wholly without merit.

Equally meritless is his claim that, even if he prematurely took default judgment on August 17, 2024, the Co-Hosts suffered no prejudice. ***See id.*** Lack of proper service of process and of the prescribed time in which to plead imposed upon defendants the greatest prejudice known to the judicial system – loss of the opportunity to be heard. "The fundamental requisite of due process of law is the opportunity to be heard." ***Mullane v. Central Hanover***

*Bank & Tr. Co.*, 339 U.S. 306, 314, (1950). "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." By taking a snap, default judgment against the Co-Hosts, Mr. Marangon deprived the Co-Hosts of that choice.

In short, the snap, default judgment that Mr. Marangon took against the Co-Hosts on August 8, 2024 is void *ab initio*, because the prothonotary had no authority under the Pennsylvania Rules of Civil Procedure to enter it. *See Mother's Restaurant, supra*. Therefore, we strike the void judgment from the record.

The Co-Hosts' first appellate issue affords them full relief. Remaining appellate issues dismissed as moot.

Order reversed. Case remanded for further proceedings consistent with this decision.

Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2025